## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ONE GEORGIA, INC., AFG GROUP INC d/b/a ABRAMS FOR GOVERNOR, and STACEY Y. ABRAMS,<br><br>        Plaintiffs,<br><br>   v.<br><br>CHRISTOPHER M. CARR, in his official capacity as the Attorney General of Georgia; JAMES D. KREYENBUHL, in his official capacity as Chairman of the Georgia Government Transparency and Campaign Finance Commission; ERIC L. BARNUM, in his official capacity as Vice Chair of the Georgia Government Transparency and Campaign Finance Commission; DARRYL HICKS, in his official capacity as a Member of the Georgia Government Transparency and Campaign Finance Commission; RICK THOMPSON, in his official capacity as a Member of the Georgia Government Transparency and Campaign Finance Commission; ROBERT A. WATTS, in his official capacity as a Member of the Georgia Government Transparency and Campaign Finance Commission; and DAVID EMADI, in his official capacity as Executive Secretary of the Georgia Government Transparency and Campaign Finance Commission,<br><br>        Defendants. | CIVIL ACTION FILE NO. _____<br><br><br>**JURY TRIAL REQUESTED**<br><br><br>**EMERGENCY RELIEF REQUESTED** |

## <u>VERIFIED COMPLAINT</u>

## INTRODUCTION

1.      Plaintiffs One Georgia, Inc., AFG Group Inc d/b/a Abrams for Governor, and Stacey Y. Abrams (with AFG Group, "AFG") file this pre-enforcement challenge to a state statute and seek declaratory and injunctive relief to protect themselves against demonstrable, immediate harm to their rights of political speech and association under the First Amendment to the U.S. Constitution. Absent such relief, Ms. Abrams – the sole qualified and declared Democratic candidate for Governor of Georgia – and her campaign committee will be unable to operate, control, chair, or otherwise use One Georgia, a leadership committee properly constituted and registered pursuant to O.C.G.A. § 21-2-34.2, to support her campaign without credible and justified threat and fear of legal proceedings being instituted against Plaintiffs. As a direct consequence, Plaintiffs will suffer ongoing and irreparable injury to their ability to use political speech to advocate for Ms. Abrams's campaign, especially compared to her chief opponent, sitting Governor Brian P. Kemp.

2.      To protect themselves from this harm, Plaintiffs contemporaneously file with this Verified Complaint a motion for temporary restraining order and preliminary injunction seeking emergency injunctive relief.

3.     Plaintiffs seek relief from O.C.G.A. § 21-2-34.2 (the "LC Statute") and an order enjoining the state officials charged with enforcing the provisions of same against them pursuant to the Georgia Government Transparency and Campaign Finance Act, O.C.G.A. § 21-5-1 *et seq*.

4.     The LC Statute permits the incumbent Governor to chair a new type of political committee, a leadership committee, to which campaign contribution limits do not apply and which may coordinate directly with a candidate or candidate's campaign committee.

5.     Indeed, Governor Kemp has already established and raised and spent funds through a leadership committee he chairs that is authorized by the LC Statute, Georgians First Leadership Committee, Inc.

6.     The LC Statute also permits "the nominee of a political party for Governor selected in a primary election in the year in which he or she is nominated" to chair a leadership committee.

7.     Plaintiffs have duly caused the establishment of One Georgia, chaired by the Democratic Party of Georgia's nominee for Governor, Ms. Abrams. Affidavit of Nikema Williams (Exhibit A). One Georgia began accepting contributions shortly after the qualifying period concluded and has timely registered as a leadership committee with the Georgia Government Transparency

2

and Campaign Finance Commission (the "Commission"), all as required by the LC Statute.

8.      The Commission, through Commissioner Defendants, has refused to confirm either its administrative approval of the registration of One Georgia or that One Georgia may operate lawfully as a leadership committee before the end of the 2022 primary election. This has caused and is causing Plaintiffs uncertainty and a credible fear of investigation, enforcement of the LC Statute and the Act against them, and subsequent sanction by Defendants.

9.      As applied by the Commission, the LC Statute has the purpose and effect of quieting core political speech of *any other challenger* to the incumbent governor, including a qualified, declared candidate for governor who has been declared the nominee of an adverse political party.

10.     The only legitimate and compelling government interest identified by the Supreme Court for restricting campaign contributions is preventing *quid pro quo* corruption or its appearance. But a statute that imposes different contribution limits for candidates who are competing against each other, especially when the advantaged candidate has already begun spending those contributions, is antithetical to the First Amendment – as this Court held in granting a preliminary injunction against enforcement of the LC Statute just last month. Order, *Perdue v.*

*Kemp*, No. 1:22-cv-53-MHC, ECF No. 58 (N.D. Ga. Feb. 7, 2022) (the

"Injunction").[1]

11.     Even if the LC Statute were supported by a sufficiently important

interest, the statute is not closely drawn to achieve any legitimate interest. Rather,

it is crafted to allow Governor Kemp and his allies to obtain a financial advantage

against challengers belonging to any other political party – an advantage they have

already taken.

12.     The LC Statute as applied herein violates Plaintiffs' constitutional

rights of speech and association, and those of any other non-incumbent challenger

for constitutional or state legislative office, to the advantage of the incumbent

Governor and other incumbents. To avoid this inequity, this Court should declare

Defendants' application of the LC Statute unlawful and enjoin enforcement of its

provisions against Plaintiffs without delay. Specifically, this Court should enjoin

Defendants from engaging in or threatening adverse action against Plaintiffs – or

any similarly-situated challenger – that establish, register, operate, control, chair,

or otherwise use a leadership committee to support her candidacy.

---

[1] On March 9, 2022, Defendants Georgians First Leadership Committee, Inc., Governor Kemp in his official and personal capacities, Attorney General Carr in his official capacity, and the Commissioners in their respective official capacities, filed their notices of appeal of the Injunction. *Perdue v. Kemp,* ECF Nos. 65, 68. No Defendant moved for a stay of the Injunction pending appeal.

## PARTIES

13.     One Georgia, Inc. is a properly constituted and registered leadership committee as defined by O.C.G.A. § 21-5-34.2(a) and a domestic nonprofit corporation incorporated in the state of Delaware with its headquarters and principal place of business in the State of Georgia. One Georgia supports Democratic candidates including gubernatorial candidate Stacey Y. Abrams, its chairperson.

14.     Plaintiff AFG Group Inc d/b/a Abrams for Governor is a campaign committee as defined by O.C.G.A. § 21-5-3(2) and a properly constituted and registered domestic nonprofit corporation organized for political activity purposes under section 527 of the Internal Revenue Code of 1986, as amended. AFG has its corporate headquarters and principal place of business in Atlanta, Georgia. AFG supports the candidacy of Stacey Y. Abrams for Governor in 2022.

15.     Plaintiff Stacey Y. Abrams is a declared and qualified candidate for Governor in 2022, and has secured the nomination of the Democratic Party of Georgia. Ms. Abrams served in the Georgia House of Representatives from 2007 through 2017, including serving as the minority leader from 2011 to 2017. She is a resident and domiciliary of the State of Georgia.

16.     Defendant Christopher M. Carr is the Attorney General of Georgia. The Attorney General is charged with considering whether to and bringing actions to enforce violations of the Georgia Government Transparency and Campaign Finance Act. O.C.G.A. § 21-5-6(b)(14). Defendant Carr is sued in his official capacity only.

17.     Defendants James D. Kreyenbuhl, Eric L. Barnum, Darryl Hicks, Rick Thompson, and Robert A. Watts (the "Commissioners") are officers or members of the Georgia Government Transparency and Campaign Finance Commission. Defendant Kreyenbuhl is the Chair of the Commission. Defendant Barnum is the Vice Chair of the Commission. The Commissioners are charged with interpreting and enforcing the Georgia Government Transparency and Campaign Finance Act, including by "prosecut[ing] actions in the superior courts" or seeking to enjoin or restrain its "violation or threatened violation." O.C.G.A. §§ 21-5-6, -7, -36. Defendant Commissioners are each sued in their respective official capacities only.

18.     Defendant David Emadi (with the Commissioners, the "Commission Defendants") is the Executive Secretary of the Georgia Government Transparency and Campaign Finance Commission. As the "executive secretary" "deem[ed] necessary to carry out the powers delegated to the [C]omission" as that term is used in O.C.G.A. § 21-5-6(a)(4), and as a "staff attorney" as that term is used in

O.C.G.A. § 21-5-3(25), Secretary Emadi is charged with interpreting and enforcing the Georgia Government Transparency and Campaign Finance Act on behalf of the Commissioners, including by "prosecut[ing] actions in the superior courts" or seeking to enjoin or restrain" its "violation or threatened violation." O.C.G.A. §§ 21-5-6, -7, -36. Secretary Emadi is sued in his official capacity only.

19.    All Defendants have acted under color of state law at all times material to this action.

## JURISDICTION AND VENUE

20.    This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

21.    This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

22.    Venue is proper under 28 U.S.C. § 1391(b) because several defendants reside in this district, and because "a substantial part of the events or omissions giving rise to the claim occurred" in this district. Venue is proper in the Atlanta Division under LR 3.1(B), NDGa.

23.    Plaintiffs have standing because the LC Statute removes campaign finance restrictions for the leadership committee chaired by the incumbent governor, Georgians First Leadership Committee, Inc. ("Georgians First") – but

not for One Georgia, the leadership committee chaired by Ms. Abrams and
supporting her campaign. Until the Commission confirms that One Georgia may
operate lawfully as a leadership committee before the end of the 2022 primary
election, Plaintiffs are credibly threatened by enforcement proceedings concerning
the LC Statute and other statutory campaign finance limitations. By contrast,
Georgians First, Governor Kemp, and his campaign committee are not so
constrained or vulnerable to this credible threat.

24.     Put plainly, as a result of the unequal contribution limits applied to
gubernatorial candidates, Governor Kemp (through Georgians First) will be able to
raise and spend more funds than any other candidate until at least May 24, 2022,
including by raising unlimited funds for the express purpose of opposing and
defeating Ms. Abrams. Indeed, Georgians First has already spent more than a
million dollars on advertisements in an effort to damage the prospects of his
political opponents.

25.     In contrast, absent access to a leadership committee, AFG is
constrained to raising funds in amounts of no more than $7,600 per donor for both
the primary election and the general election. This inequity has caused and will
cause AFG to expend more time, labor, attention, and money than Governor Kemp

and his campaign in fundraising, impairing AFG's ability and efforts to spread its campaign message in the same manner as Governor Kemp's campaign committee.

26.    As of March 20, 2022, One Georgia is registered as a leadership committee with the Georgia Government Transparency and Campaign Finance Commission. Commission Defendants, through their staff, have not confirmed that One Georgia will remain registered, or that One Georgia may operate as a leadership committee, and have provided no official timeline for doing so.

27.    Consequently, Plaintiffs reasonably anticipate and are credibly threatened that they will be subject to investigation, enforcement proceedings, and sanction by the Commission (through Commission Defendants) and subsequently by the Georgia Department of Law (through Defendant Carr), should One Georgia accept contributions or transmit funds while Commission Defendants refuse to confirm One Georgia's status, or should they de-register One Georgia before the end of the 2022 primary election.

28.    Plaintiffs' ongoing First Amendment injury, the unequal contribution limits created by O.C.G.A. § 21-5-34.2, and reasonable apprehension of investigation and sanction by Defendants is concrete, particularized, and actual, not conjectural or hypothetical.  A plaintiff need not first risk sanctions of imminent

prosecution or enforcement to test the validity of a state law. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999).

29.     An order enjoining Defendants from enforcing or attempting to enforce campaign finance law against Plaintiffs for engaging in the same conduct to promote their political speech and association as the incumbent Governor, his campaign, and his leadership committee would redress Plaintiffs' injuries.

## LEGAL BACKGROUND

30.     Laws restricting campaign contributions must satisfy at least "exacting scrutiny" by the Court because of how they constrain political speech and association. *Americans for Prosperity Found. v. Bonta*, 594 U.S. ___, 141 S. Ct. 2373, 2383, 210 L. Ed. 2d 716 (2021).

31.     A law restricting campaign contributions is valid only "if the State demonstrates a sufficiently important interest and the law is closely drawn to serve that state interest." *Ala. Democratic Conf. v. Atty. Gen. of Ala.*, 838 F.3d 1057, 1063 (11th Cir. 2016) (citing *Buckley v. Valeo*, 424 U.S. 1, 25, 96 S. Ct. 612, 638, 46 L.3d.2d 659 (1976) (per curiam).

32.     The purpose of preventing corruption or its appearance is the sole "legitimate and compelling" interest "thus far identified for restricting campaign finances," including contributions. *Ala. Democratic Conf.*, 838 F.3d at 1064

(quoting *FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 496-97, 105 S. Ct. 1459, 468, 84 L.3d.2d 455 (1985)).

33.    Plaintiffs are entitled to equal protection under the law. Accordingly, a law imposing unequal and discriminatory treatment to a candidate's First Amendment rights must satisfy exacting scrutiny as well.

34.    On January 6, another candidate for Governor, former Georgia Senator David Perdue, filed a verified complaint and a motion for emergency injunctive relief alleging violations to his constitutional rights by the LC Statute. Complaint, *Perdue v. Kemp,* No. 1:22-cv-00053-MHC, ECF No. 1 (N.D. Ga. Jan. 6, 2022).

35.    Perdue complained that Georgians First, the leadership committee Governor Kemp chairs, could accept campaign contributions in any amount at any time and spend those unrestricted funds to affect the outcome of any election or the victory or defeat of any candidate in coordination with those candidates, unconstitutionally injuring Perdue's rights of speech and association and to equal protection. *Id.* (citing LC Statute at O.C.G.A. § 21-5-34.2(a), (d), (f)).

36.    This Court agreed. On February 7, it issued an order holding that the application of the LC Statute to Governor Kemp and Mr. Perdue neither served any sufficiently important governmental interest (that is, an anti-corruption interest)

nor was closely drawn to any such interest to justify the injury-in-fact to a competing campaign that remained subject to the restrictions of the Georgia Election Code. Injunction at 14-16, 21-35.

37.     This Court found the harm to Perdue and his campaign irreparable and the equities to favor an injunction, such that they had met the requirements for a preliminary injunction, and enjoined Georgians First from expending funds through the end of the gubernatorial primary "for the purpose of advocating for the re-election of Governor Kemp or the defeat of an opponent of Governor Kemp" or "to defray ordinary and necessary expenses incurred in connection with Governor Kemp's campaign for re-election." *Id.* at 38-40.

## FACTUAL BACKGROUND

38.     Contribution limits established by the Georgia Government Transparency and Campaign Finance Act, O.C.G.A. § 21-5-1 *et seq.* (the "Act") applies equally to all gubernatorial candidates and their committees (except for leadership committees under the LC Statute). In particular, the Act prohibits any statewide "candidate or campaign committee" from receiving aggregate contributions from any person, natural or corporate, exceeding $7,600 for the primary election, $7,600 for the general election, and $4,500 for a runoff election following either. O.C.G.A. § 21-5-41(a), (k); "Minutes of Commission Meeting,"

12

Ga. Gov't Transparency & Campaign Fin. Comm'n, Sept. 30, 2021 (*available at*

https://bit.ly/3HxFYGh) (last visited March 20, 2022).

39.     Campaign contributions may only defray "ordinary and necessary"

expenses" of a campaign, which include inter alia office rent and expenses, staff

salaries, postage, lodging, travel expenses, polling, and so forth. O.C.G.A. § 21-2-

3(18), 33(a).

40.     The LC Statute undermines the Act's campaign committee

contribution regime by authorizing among others "the Governor … [and] the

nominee of a political party for Governor selected in a primary election in the year

in which he or she is nominated" to establish one "leadership committee" to accept

contributions from its members or supporters. O.C.G.A. § 21-5-34.2(a)-(b).

41.     Under the LC Statute, the leadership committee

> May accept contributions or make expenditures for the purpose of
> affecting the outcome of any election or advocating of the election or
> defeat of any candidate, may defray ordinary and necessary expenses
> incurred in connection with any candidate's campaign for elective
> office, and may defray ordinary and necessary expenses incurred in
> connection with a public officer's fulfillment or retention of such office.

O.C.G.A. § 21-5-34.2(d). Leadership committees which accept contributions over

$500 "shall register with the [C]ommission within ten days of such accepted

contribution" and thereafter file disclosure reports on the same schedule as

candidates and campaign committees. O.C.G.A. § 21-5-34.2(e).

42.     Contribution limits established under the Act "shall not apply to contributions to a leadership committee or expenditures made by a leadership committee in support of a candidate or a group of named candidates." *Id.*

43.     Moreover, the leadership committee shall not be considered an independent committee, which, while exempt from limits on the amount of campaign contributions, are compelled not to coordinate with candidates, campaign committees, or political action committees. O.C.G.A. §§ 21-5-3(15), 21-5-34.2(f); Ga. Comp. R. & Regs. 189-2-.01(14), 189-6-.04.

44.     Accordingly, a leadership committee not only may accept unlimited contributions, but also may make unlimited expenditures benefitting the candidacy of its chair (and any others the chair wishes to support) without such spending counting as a contribution to the chair or her campaign committee. O.C.G.A. §§ 21-5-34.2(d), (f).

45.     On December 1, 2021, Ms. Abrams caused to be filed her declaration of intent to accept campaign contributions for her campaign for Governor of Georgia.

46.     On March 8, 2022, Ms. Abrams qualified to seek the nomination of the Democratic Party of Georgia for, and thus to stand for election as, Governor of Georgia.

47.     No other candidate qualified for the nomination of the Democratic

Party of Georgia for Governor of Georgia at the close of the qualification period at

noon on March 11, 2022.

48.     Write-in candidates are not eligible for candidacy in a general primary

election. O.C.G.A. § 21-2-133(c).

49.     At least one qualified registered voter will vote for Ms. Abrams in the

primary election scheduled for May 24, 2022 – over two months from today.

50.     Accordingly, and as recognized by the Democratic Party of Georgia,

Ms. Abrams is the Democratic nominee for Governor of Georgia in 2022.

Williams Aff. (Ex. A) at ¶¶ 7-8.

51.     Pursuant to O.C.G.A. § 21-5-34.2(d)-(e), One Georgia began

accepting contributions once the qualifying period for candidacy for public office

ended at noon on March 11, 2022.

52.     On March 16, 2022, One Georgia timely registered with the

Commission as a leadership committee chaired by Ms. Abrams by completing and

electronically submitting its Commission-drafted registration form via the

Commission's online portal.

53.     One Georgia received an email confirming that submission, and

another later that morning notifying One Georgia that its registration as a

leadership committee has been processed and approved by the Campaign Finance Commission.

54.     That same day, undersigned counsel sought confirmation via electronic mail and telephone from Robert Lane, deputy executive secretary and general counsel for the Commission, that the approval of One Georgia's registration as a leadership committee constituted acceptance of One Georgia's lawful status as a leadership committee under the LC Statute. In response and in subsequent correspondence, and despite the charge to the Commission to enforce the Act (and thus the LC Statute), Attorney Lane indicated that the Commission Defendants were not able to determine whether Ms. Abrams was permitted to use a leadership committee as an "official" "nominee," and argued that One Georgia therefore should not raise funds under the LC Statute. *See* Exhibit B (email correspondence of March 16-18, 2022 between R. Lane and A. Sparks).

55.     Until the Commission confirms One Georgia's status as a leadership committee, or otherwise agrees that One Georgia may lawfully raise funds under the LC Statute, Plaintiffs remain uncertain of whether the Commission will institute investigatory or enforcement proceedings against Plaintiffs, and thus reasonably fear future sanction by Defendants.

56.     Due to the credible threat of enforcement proceedings and the uncertainty wrought by the Commission Defendants' conduct, One Georgia has not spent any funds in its possession, whether in support of Ms. Abrams or any other candidate, pending Commission confirmation of its current lawful status as a leadership committee under the LC Statute.

57.     Based upon the Commission's position, Governor Kemp can out-raise Plaintiffs through at least 7:01 p.m. on May 24, 2022. Put differently, Commission Defendants will allow Governor Kemp to chair what amounts to a second campaign committee entitled to raise unlimited amounts to benefit his candidacy and campaign committee for more than two full months before Defendants will allow the leadership committee chaired by the Democratic nominee for governor to operate under the LC Statute. Consequently, opposing candidates and their campaign committees are consigned to unequal capabilities to raise (and thus to spend) funds under the law.

58.     In addition to Plaintiffs' inability to solicit or accept contributions in the same manner or amounts as the incumbent and his allies, and as alleged elsewhere herein, Plaintiffs anticipate an imminent, credible threat that Defendants will institute investigatory and enforcement proceedings and issue sanctions

against them under the LC Statute and the Act based upon the Commission's

refusal to confirm One Georgia's current lawful status as a leadership committee.

## CAUSES OF ACTION

### COUNT I
### Declaratory Judgement Act, 28 U.S.C. §§ 2201, 2202

59.     Plaintiffs reallege and incorporate by reference Paragraphs 1-58 of

this Complaint as though fully set forth herein.

60.     There is an actual controversy in this jurisdiction requiring the Court

to declare the rights of Plaintiffs and the legal relations between Plaintiffs and

Defendants regarding the application of the LC Statute.

61.     The Supreme Court has "never upheld the constitutionality of a law

that imposes different contribution limits for candidates who are competing against

each other," and the "unprecedented step of imposing different contribution . . .

limits on candidates vying for the same seat is antithetical to the First

Amendment." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 738, 743–44 (2008).

*See also* Injunction at 25, 36-37.

62.     Plaintiffs have suffered, are suffering, and imminently will continue to

suffer irreparable injury as a result of the application of the LC Statute in a manner

that favors one candidate over another when vying for the same seat.

63.    Plaintiffs have suffered, are suffering, and imminently will continue to suffer irreparable injury as a result of the refusal of Commission Defendants to accept the registration of a leadership committee chaired by Ms. Abrams.

64.    Plaintiffs have an actual and credible fear of imminent prosecution or sanction resulting from enforcement of the LC Statute or the Act by Defendants.

65.    Plaintiffs thus require direction from the Court before One Georgia accepts additional funds, or any funds One Georgia has raised to date are transmitted, to relieve them from their reasonable uncertainty of whether such political conduct and speech will result in prosecution or sanction.

## COUNT II
## Violation of U.S. Const., Amd. I & Amd. XIV, Via 42 U.S.C. § 1983

66.    Plaintiffs reallege and incorporate by reference Paragraphs 1-58 of this Complaint as though fully set forth herein.

67.    The First Amendment, as enforced by 42 U.S.C. § 1983, guarantees protections of the freedoms of speech and of association. This includes *inter alia* the right to express core political "speech uttered during a campaign for political office." *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 233 (1989).

68.     For decades, Georgia had forbidden the acceptance by a candidate or campaign committee of contributions above a certain limit, regardless of whether the candidate was or was not an incumbent. O.C.G.A. § 21-5-41.

69.     The LC Statute provides the incumbent Governor with the ability to chair a leadership committee, which may accept *unlimited* contributions and make unlimited expenditures, and which functions as an effective second campaign committee. O.C.G.A. § 21-5-34.2(e). Governor Kemp has accepted that opportunity, chairing Georgians First and raising and spending sums made by unlimited contribution to its coffers. *See, e.g., Perdue v. Kemp,* No. 1:22-cv-53-MHC, ECF No. 56 (N.D. Ga. Feb. 4, 2022) at 5-6, 16-17 (describing six-figure expenditure by Georgians First to air television commercial attacking declared challenger to Governor Kemp).

70.     By refusing to confirm that One Georgia's registration as a leadership committee chaired by the gubernatorial nominee of the Democratic Party of Georgia may operate lawfully under the LC Statute prior to the end of the 2022 primary election, the Commission has created uncertainty over whether that nominee may register, operate, control, chair, or otherwise use a leadership committee unless and until the primary election has ended, which under applicable law may occur no earlier than 7:01 p.m. on May 24, 2022. *See* Exhibit B.

71.     As a result of Commission Defendants' current application of the LC Statute, all gubernatorial candidates *except* the incumbent governor will be restricted to a single campaign committee and bound by long-standing statutory contribution limits under the Act until that time.

72.     As a result, Plaintiffs – who are the Democratic nominee for governor of Georgia or registered political committees supporting her campaign – lack the opportunity to promote their respective messages or to exercise their First Amendment rights to the same extent as her incumbent adversary in advance of the general election.

73.     The LC Statute restricts political speech in the form of campaign contributions without any demonstrated sufficiently important governmental interest.

74.     The LC Statute is not closely drawn to serve any sufficiently important State interest.

75.     The LC Statute as applied in the middle of the ongoing 2022 election cycle violates Plaintiffs' rights to free speech and free association under the First and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. § 1983.

76.     The LC Statute has caused, will continue to cause, and imminently threatens to cause Plaintiffs irreparable injury by denying Plaintiffs' ability to raise campaign funds used to engage in core political speech and association.

## COUNT III
### Violation of U.S. Const., Amd. XIV, Via 42 U.S.C. § 1983

77.     Plaintiffs reallege and incorporate by reference Paragraphs 1-58 of this Complaint as though fully set forth herein.

78.     Under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983, Ms. Abrams has the right to enjoy the equal protection of the law, especially where, as here, unequal treatment under the law burdens the exercise of the fundamental right to free speech under the First Amendment.

79.     An incumbent candidate for governor and the gubernatorial nominee of an opposing political party are similarly-situated.

80.     There is no legitimate governmental interest, let alone a sufficiently important interest, that justifies an application of the LC Statute by Defendants that either the discriminatory distribution of benefits and disadvantages based solely on incumbent status or the withholding of confirmation of the lawful operation of a leadership committee by denying a political party's determination that the sole qualified candidate for public office is that party's nominee.

81.     The LC Statute restricts political speech in the form of campaign contributions without any demonstrated sufficiently important governmental interest.

82.     The LC Statute is not closely drawn to serve any sufficiently important State interest.

83.     The LC Statute as applied in the middle of the ongoing 2022 election cycle violates Plaintiffs' rights to free speech and free association under the First and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. § 1983.

84.     Upon One Georgia's registration as a leadership committee chaired by the gubernatorial nominee of the Democratic Party of Georgia, the Commission has created uncertainty over whether that nominee may register, operate, control, chair, or otherwise use a leadership committee unless and until the primary election has ended, which may occur by law no earlier than 7:01 p.m. on May 24, 2022. *See* Exhibit B.

85.     As applied by Commission Defendants, the LC Statute treats the incumbent candidate unequally with respect to contribution limits, based solely on his status as an incumbent. This unequal treatment gives incumbent gubernatorial

candidates a significant competitive advantage over other candidates declared and qualified for the same office.

86.     As a result of this application of the LC Statute by Commission Defendants, Plaintiffs are constrained from competing on equal footing with its main opponent, Governor Kemp.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

A.     Declare that the LC Statute as applied violates the First and Fourteenth Amendments to the United States Constitution;

B.     Issue a temporary restraining order prohibiting Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from engaging in investigatory or enforcement proceedings or sanctioning Plaintiffs for alleged violation of the LC Statute or the Act until such time as this Court may hear Plaintiffs' contemporaneously-filed motion for a preliminary injunction;

C.     Preliminarily and permanently enjoin Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from engaging in investigatory or enforcement proceedings or sanctioning Plaintiffs for alleged violation of the LC Statute or the Act by

registering, operating, chairing, controlling, or otherwise using One Georgia as a leadership committee under the terms of the LC Statute prior to the certification of results of the primary election in the 2022 election cycle;

D.     Award Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to, *inter alia*, 42 U.S.C. § 1988 and other applicable laws; and

E.     Grant such other or further relief the Court deems appropriate.

Respectfully submitted, this 21st day of March 2022.

**KREVOLIN & HORST, LLC**

**<u>Adam M. Sparks</u>**
Joyce Gist Lewis
Georgia Bar No. 296261
Adam M. Sparks
Georgia Bar No. 341578
1201 W. Peachtree Street, NW
3250 One Atlantic Center
Atlanta, Georgia 30309
(404) 888-9700
(404) 888-9577 (facsimile)
jlewis@khlawfirm.com
sparks@khlawfirm.com
*Attorneys for Plaintiffs*
