# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

ONE GEORGIA INC., *et al.*,

    *Plaintiffs*,

    v.

CHRISTOPHER M. CARR, in his
official capacity as Attorney General
of Georgia, *et al.*,

    *Defendants*.

CIVIL ACTION

No. 1:22-CV-1130-MHC

# DEFENDANTS' OPPOSITION TO
# PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs One Georgia, Inc. ("One Georgia"), AFG Group Inc., d/b/a Abrams for Governor (the "Abrams Campaign"), and Stacey Abrams have brought this suit complaining of their inability to operate a leadership committee pursuant to O.C.G.A. § 21-5-34.2, as they claim that Abrams is the gubernatorial nominee of the Democratic Party of Georgia. (*See* Compl., Doc. 1, ¶ 50.) Plaintiffs assert this despite a complete absence of cited authority in Georgia law for the proposition that a candidate unilaterally can be declared nominee despite the fact that the General Primary to establish the nominees of the respective major political parties in Georgia will not even be held until May 24, 2022. While the Plaintiffs may be correct and Georgia law might very well permit her to be declared precipitately the Democratic nominee for Governor and proceed with the registration and operation of a leadership committee authorized under O.C.G.A. § 21-5-34.2, such a determination is a state law question best considered by Georgia courts making a determination on the interpretation of the applicable Georgia law. This is doubly so where any determination that Abrams is the nominee of the Democratic Party of Georgia may have other state law ramifications on the ability of her campaign committee to accept donations as a candidate for *nomination* in a primary election rather than treating the nomination process as already concluded.

This action is, in some aspects, similar to the pending litigation initiated

by former U.S. Senator David Perdue and Perdue for Georgia in *Perdue v. Kemp*, No. 1:22-CV-0053-MHC (N.D. Ga.), in which this Court recently granted in part Perdue's request for preliminary injunctive relief by preliminarily enjoining Governor Kemp's leadership committee, Georgians First Leadership Committee ("Georgians First"), from expending funds from February 7, 2022 forward for the purpose of advocating for the re-election of Governor Kemp or the defeat of an opponent of Governor Kemp through the 2022 primary election and primary runoff election.[1]   In this new lawsuit, Plaintiffs acknowledge the limited injunctive relief that was ordered in *Perdue v. Kemp*, but Plaintiffs then move that One Georgia be permitted to accept contributions as a leadership committee.   (*See* Pl.'s Mtn., Doc. 9, p. 3-4.)[2]   However, unlike Perdue's campaign, One Georgia has already registered as a leadership committee and admits in its filings that it began accepting contributions.  (*See* Compl., Doc. 1, ¶ 7.)  Plaintiffs come before this Court based on their alleged uncertainty and concern that an enforcement action could be initiated by the Commission Defendants or by the Attorney General, but the Complaint and Plaintiffs' Motion contain no allegations of a credible threat of imminent enforcement or

---

[1] An appeal of this Court's February 7, 2022 Order is currently pending, *Perdue v. Kemp*, No. 22-10738 (11th Cir.).

sanctions. Rather, Plaintiffs' filings reflect that they asked the Commission for a determination regarding whether Abrams could utilize One Georgia as a leadership committee prior to the primary election where she is the only qualified candidate for her party's nominee for Governor. Rather than await a response from the Commission on the day that it was promised to Plaintiffs' counsel, Plaintiffs filed this lawsuit.

Plaintiffs' Motion for Preliminary Injunction should be denied because Plaintiffs have failed to establish standing. The alleged injury of "uncertainty" regarding Abrams' status for a leadership committee pursuant to O.C.G.A. § 21-5-34.2, is neither traceable to nor redressable by the named Defendants. However, even if they do in fact have standing, Plaintiffs raise a novel issue of Georgia law– whether the sole qualified candidate for a party's nominee for Governor may establish a leadership committee pursuant to O.C.G.A. § 21-5-34.2 prior to the certification of the results of the primary election.

As discussed herein and in a contemporaneously filed motion and briefing, Defendants respectfully submit that this question of Georgia law should be presented as a certified question to the Supreme Court of Georgia, prior to this Court's ruling on the question of preliminary injunctive relief. For these reasons, the Motion for Preliminary Injunction should be denied.

# BACKGROUND

## A.    Georgia Law on Leadership Committees

Effective July 1, 2021, O.C.G.A. § 21-5-34.2 permitted the creation of leadership committees, "chaired by the Governor, the Lieutenant Governor, **the nominee of a political party for Governor selected in a primary election** in the year in which he or she is nominated, or the nominee of a political party for Lieutenant Governor selected in a primary election in the year in which he or she is nominated." O.C.G.A. § 21-5-34.2(a)(emphasis added).[3]    A leadership committee may accept contributions or make expenditures for the purpose of affecting the outcome of any election or advocating for the election or defeat of any candidate...." O.C.G.A. § 21-5-34.2(d). A leadership committee must register with the Commission upon receiving contributions or making expenditures in excess of $500.00, and thereafter file periodic reports disclosing contributions and expenditures. O.C.G.A. § 21-5-34.2(e).    The contribution limits in O.C.G.A. § 21-5-41

---

[3] The majority caucus of the House of Representatives, the minority caucus of the House of Representatives, the majority caucus of the Senate, and the minority caucus of the Senate can also designate up to two political action committees as "leadership committees." *Id*.  The Senate minority caucus' committee is also authorized to accept contributions and make expenditures for the purpose of advocating for Abrams' election or against her opponent without being subject to campaign contribution limits. *See* O.C.G.A. § 21-5-34.2(a), (d).

ordinarily applicable to candidates and their campaign committees do not apply to a leadership committee's contributions or expenditures in support of a candidate or a group of named candidates. *Id.* A leadership committee can defray ordinary and necessary expenses incurred in connection with any candidate's campaign for elective office and may defray ordinary and necessary expenses incurred in connection with a public officer's fulfillment or retention of that office. O.C.G.A. § 21-5-34.2(d).

## B. Allegations in Complaint and Plaintiffs' Motion for Preliminary Injunction

In their Motion, Plaintiffs acknowledge that this Court has already "partially enjoined enforcement of the LC Statute [O.C.G.A. § 21-5-34.2] by forbidding Georgians First [. . .] from newly-spending funds it had raised against his opponents until after the end of the primary." (Pl.'s Mot., Doc. 9, p. 4.) Despite the fact that they have acknowledged that this Court has already determined the scope of relief it believes to be appropriate to redress any injuries caused by a claimed violation of O.C.G.A. § 21-5-34.2, Plaintiffs request an entirely different form of relief. Rather than seeking to enjoin Governor Kemp's leadership committee from benefiting from what they describe as the LC statute's "inequitable scheme" (*Id.,* p. 19), Plaintiffs instead ask this Court to permit them to reap the benefits of O.C.G.A. § 21-5-34.2 and,

in consequence, in a way denied to the opponent they claim inequitably benefits from the leadership committee statute by virtue of this court's prior order. (*Id.*, p. 4-5.)

Plaintiffs contend that this relief is appropriate because as the leadership committee chaired by an incumbent Governor, O.C.G.A. § 21-5-34.2 allows Georgians First to "raise and spend more funds than any other candidate until at least May 24, 2022 [the date of the primary election], including by raising unlimited funds for the express purpose of opposing and defeating Ms. Abrams." (Compl., Doc. 1, ¶¶ 5, 24.) Plaintiffs contend that "Georgians First has already spent more than a million dollars on advertisements in an effort to damage the prospects of [Governor Kemp's] political opponents." (*Id.*, ¶ 24.)[4] However, One Georgia "began accepting contributions shortly after the qualifying period concluded." (*Id.*, ¶ 7.)

On March 8, 2022, Abrams qualified to seek the nomination of the Democratic Party of Georgia to stand for election as Governor of Georgia.

---

[4] While there is not yet any evidence in the record as to which political opponent(s) have been targets of this million-dollar advertising campaign, Defendants note that Republican gubernatorial primary candidate David Perdue has made the claim that he, not Ms. Abrams, has been the target of the million-dollar advertising campaign. *See Perdue v. Kemp*, United States District Court, Northern District of Georgia, Civil Action File No. 1:22-cv-00053-MHC [Doc. 1, ¶29]

(Compl., Doc. 1, ¶46). On March 11, 2022, the qualification period for Democratic Party of Georgia gubernatorial candidates closed without any persons other than Abrams having qualified for nomination. (*Id.*, ¶ 47).

On March 16, 2022, One Georgia submitted a registration form seeking to register One Georgia as a leadership committee with the Commission using the Commission's online submission portal. (Compl., Doc. 1, ¶ 52). Counsel for Plaintiffs then contacted Robert Lane, Deputy Executive Director and General Counsel for the Commission to inquire whether the Commission intended to reject or delete the registration. (Compl., Doc. 1, Exhibit B, p. 6). Plaintiffs' counsel provided an affidavit from the chair of DPG stating that when a sole candidate is declared and qualified for office, DPG "customarily" declares and recognizes that sole qualifier to be the Democratic nominee, and that as the sole qualifying candidate, DPG recognizes Abrams as the Democratic party nominee for Governor of the State of Georgia. (Compl., Doc. 1, Exhibit A, ¶¶ 6-8).

On behalf of the Commission, Lane advised counsel for Plaintiffs that while O.C.G.A. § 21-5-34.2 would only permit Abrams to commence fundraising upon an official nomination to stand for election for Governor, "determining whether a person is a nominee or qualified candidate is not a decision the Commission gets to make." (Compl., Doc. 1, Exhibit B, p. 9). Lane

7

indicated that the Commission had contacted the Georgia Secretary of State's office and Department of Law to seek a legal opinion as to when Abrams would officially become the nominee under Georgia law. (*Id.*, p. 12.)

On Friday, March 18, 2022, Lane advised Plaintiffs' counsel that "[t]he most recent update from our attorneys is that we should have an answer by Monday." (*Id.*, p. 1). On Monday, March 21, 2022, at 9:08 a.m., Plaintiffs' counsel emailed Lane and advised him that Plaintiffs would file suit at approximately 11:00 a.m. that day unless the Commission confirmed prior to that time that One Georgia's registration would remain active and could operate as a leadership committee. (Attached hereto as Exhibit A to Defendants' Response.) As Commission staff awaited legal guidance from the other agencies involved that was due to be given by close of business that day, Plaintiffs proceeded to file this action shortly after 11:00 a.m. on Monday.

Plaintiffs now ask this court to enjoin Defendants "and all persons acting in concert with each or any of them," from investigating, engaging in enforcement proceedings, or sanctioning Plaintiffs for an alleged violation of O.C.G.A. § 21-5-34.2 or the Georgia Government Transparency and Campaign Finance Act by operating One Georgia as a leadership committee, prior to the certification of the results of the 2022 primary election. (Pl.'s Mot., Doc. 9, p. 25.)

## ARGUMENT

### I.     Plaintiffs have not established standing.

Article III of the U.S. Constitution limits this Court's jurisdiction to "actual 'cases' or 'controversies'" and does not permit federal courts to issue advisory opinions. *Miller v. F.C.C.*, 66 F.3d 1140, 1145 (11th Cir. 1995) (citing *Flast v. Cohen*, 392 U.S. 83, 94-96 (1968)). "To have a case or controversy, a litigant must establish that he [or she] has standing, which must exist throughout all stages of litigation." *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019) (citation and internal quotation omitted).   To establish standing, the litigant must show: (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements," which, at the initial pleading stage, may be established based on "general factual allegations of injury." *Id*. at 561.

Plaintiffs fail to demonstrate traceability and redressability as to the named Defendants, none of which are given the statutory authority to declare that Abrams is legally considered the Democratic party nominee for Governor under Georgia law.   As a result, for the reasons discussed herein, Plaintiffs lack standing, and the Motion should be dismissed.

## A.     Plaintiffs have failed to establish an injury that is traceable to the named Defendants.

Article III standing requires that the plaintiff's injury be "'fairly traceable' to the defendant's actions and redressable by relief against <u>that</u> defendant." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1256 (11th Cir. 2020) (emphasis in original) (quoting *Lewis v. Governor of Alabama*, 944 F.3d 1287, 1298, 1301 (11th Cir. 2019)).    As discussed above, Plaintiffs' alleged constitutional injury derives from their "uncertainty" regarding how O.C.G.A. § 21-5-34.2 and their unsupported allegations of an "actual and credible fear of imminent prosecution or sanction."    (Compl., Doc. 1, ¶ 64.)    However, the specific factual allegations made by Plaintiffs in the Complaint and in Plaintiffs' Motion fail to show that any alleged injury is traceable to the named Defendants.

### i.     Plaintiffs' claimed injuries are not traceable to any act of Attorney General Carr.

Plaintiffs' Complaint names Attorney General Carr as a defendant, but the only allegations against him in the Complaint are that: (1) the Attorney General of Georgia "is charged with considering whether to and bringing action to enforce the Georgia Government Transparency and Campaign Finance Act" pursuant to O.C.G.A. § 21-5-6(b)(14).   (Compl., Doc. 1, ¶ 16); and (2) Plaintiffs "reasonably anticipate and are credibly threatened that they will be subject to

enforcement proceedings, and sanction" at a subsequent date by Attorney General Carr, should One Georgia accept contributions or transmit funds prior to some determination by the Commission as to One Georgia's status. (*Id.*, ¶ 27.) Such a vague statement regarding alleged enforcement of the challenged statute is insufficient to satisfy the traceability requirement of standing. *See Lewis*, 944 F.3d at 1298 ("no one contends that the Attorney General is actually, affirmatively 'enforcing' [the challenged legislation]—at least in the usual sense, say, of bringing suit to implement its provisions. Nor has he ever done so—or even threatened to do so, for that matter. Under our precedent, that's a problem.") For example, in *Doe v. Pryor*, the Eleventh Circuit considered a plaintiff's constitutional challenge to Alabama Code § 13A-6-65(a)(3), which forbade so-called "deviate sexual intercourse," defined to include consensual oral and anal sex. 344 F.3d 1282, 1283 (11th Cir. 2003). The Eleventh Circuit held that because "[t]he only defendant in th[e] case [was] the Alabama Attorney General" and because "[t]he Attorney General ha[d] taken no action to enforce section 13A-6-65(a)(3) against" the plaintiff, his injuries were "not 'fairly traceable' to the only defendant before the Court." *Id.* at 1285. Here, the sole allegations that anyone could bring enforcement proceedings against Plaintiffs are the bare bones allegations in the Complaint that the Attorney General *could* bring an action against Plaintiffs – and there is

absolutely no allegation in either the Complaint or in Plaintiffs' Motion that such an action has been filed or has even been threatened as to Plaintiffs.

ii. **Plaintiffs' claimed injuries are not traceable to the Commission Defendants.**

Although the Commission does generally have statutory authority to make investigations and to institute and prosecute actions for violations of the Act (*see generally* O.C.G.A. § 21-5-6), the particular injuries claimed by Plaintiffs are not traceable to the Commission Defendants. Although the Commission does have the ability to investigate potential violations of O.C.G.A. § 21-5-34.2 and institute enforcement proceedings for such violations, the Commission does not have the authority to determine whether or not Abrams can be considered a party nominee for Governor before the primary election based on her lack of a primary challenger and DPG's "custom" of considering an unopposed candidate to be the party nominee upon the close of the qualifying period. Until an appropriate authority advises the Commission as to the legality of Plaintiffs' claim to be the nominee prior to the election, the Commission is not in the position to exercise any of its statutory powers of investigation or enforcement, and any injuries to Plaintiff would therefore be traceable not to the Commission. If Abrams is determined by an appropriate authority applying Georgia law to be the Democratic party nominee for

Governor as of the close of qualifying, One Georgia may operate immediately without fear that doing so will result in an investigation or enforcement action alleging a violation of O.C.G.A. § 21-5-34.2. Abrams, therefore, would suffer no injury, and there would be no traceability to the Commission or any other party.

Alternatively, if it is determined that Abrams cannot be considered the lawful Democratic party nominee until the primary election has concluded, this still does not create an injury traceable to the Commission Defendants, even if it means that One Georgia has acted prematurely in its operations. As explained above (*see* Section IA *infra* at p. 10), One Georgia's premature actions alone would not be expected to result in an investigation or enforcement action alleging a violation of O.C.G.A. § 21-5-34.2. Any alleged injury from the "uncertainty" of Plaintiffs' legal status as a "party nominee for Governor" or any "chilling effect" occasioned from that uncertainty would therefore not be traceable to the Commission defendants, who have no statutory authority whatsoever to declare that Abrams is (or is not) presently the Democratic party nominee under Georgia election law.

## B. Plaintiffs have failed to articulate a remedy that could be redressed by the named Defendants.

The central issue in Plaintiffs' action is whether Abrams, as the sole qualified candidate for the DPG at the end of the qualifying period, is permitted by the terms of O.C.G.A. § 21-5-34.2 to establish and operate One Georgia as her leadership committee immediately, without having to await the results of the primary election. No relief can be afforded to Plaintiffs unless a determination is made by an appropriate authority that Abrams can lawfully be considered at present a party nominee for Governor under the facts presented. This determination "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume to control or to predict." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 562 (1992) (citation and quotation omitted).

Georgia election law provides that a political party shall nominate its candidates for public office in a primary. O.C.G.A. § 21-2-151(a). Except for substitute nominations provided for in O.C.G.A. § 21-2-134 and nomination of presidential electors, all nominees of a political party "shall be nominated in the primary preceding the general election in which the candidates' names will be listed on the ballot." *Id*. The primary held for such purposes shall be

conducted by county election superintendents in the same manner as prescribed by law and by rules and regulations of the State Election Board and the superintendent for political elections. O.C.G.A. § 21-2-151(b). Primaries of all political parties "shall be conducted jointly." *Id.* In a general primary where an unopposed candidate is seeking party nomination for a public office but fails to receive a single vote, the candidate shall *not* be nominated for such public office and such party shall not have a candidate for that public office on the ballot in the ensuing general election. O.C.G.A. § 21-2-158.[5]

Plaintiffs have argued that the Commission "must defer to the political party making the nomination as to whether it has a nominee for a given public office." (Compl., Exhibit B, p. 3). However, neither the Commission nor the Attorney General have the authority to engage in such deference or to declare a candidate to be a party nominee outside the election process specified by the Georgia code. Indeed, Plaintiffs cite to *no* Georgia law that supports the contention that the Commission Defendants would, could, or should make such

---

[5] Georgia law does expressly provide that after the expiration of the qualification deadline, candidates for municipal office that have no opposing candidates within his or her own political party shall automatically become the nominee of his or her party if the applicable city charter or ordinance does not provide to the contrary. O.C.G.A. § 21-2-153.1(b). However, this provision is specific to candidates for municipal office, and no similar provision is found in the statutes applicable to candidates for party nomination in state or county primaries.

a determination regarding whether a person is a nominee or qualified candidate – nor does Georgia law place such a requirement on the Commission. *See* O.C.G.A. § 21-5-6 (regarding the powers, duties, and authority of the Commission). Likewise, while the Attorney General does have certain statutory enforcement powers with regard to violations of the Act (*see, e.g.*, O.C.G.A. § 21-5-6(b)(14)(C)(iii)-(v)), he has no role in declaring Abrams to be the gubernatorial nominee of the Democratic party. An injunction ordering any of the Defendants to allow Plaintiffs to operate a leadership committee under O.C.G.A. § 21-5-34.2 cannot provide redress, because neither Defendants nor their agents control the decision of whether or not Abrams is presently "the nominee of a political party for Governor selected in a primary election…" *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1254 (11th Cir. 2020) (redressability not present where injunction ordering Secretary of State could not provide redress because "neither she nor her agents control the order in which candidates appear on the ballot.") Therefore, because Plaintiffs' alleged injuries are not redressable by an injunction against Defendants, Plaintiffs lack standing, and their claims should be dismissed.

## II. If Plaintiffs do have standing, this Court should certify to the Georgia Supreme Court the question of whether O.C.G.A. § 21-5-34.2 permits Abrams to establish a leadership committee as a political party nominee prior to completion of the primary election.

The Georgia statute authorizing the creation of leadership committees is a new law, having only become effective on July 1, 2021. Assuming they can survive the threshold questions of ripeness and standing, Plaintiffs present a novel question regarding Georgia law which has yet to be considered by the Supreme Court of Georgia – whether the sole qualified candidate for a party's nominee for Governor may establish a leadership committee pursuant to O.C.G.A. § 21-5-34.2 prior to the results of the primary election.

Pursuant to Local Rule 7.1, Defendants are submitting contemporaneously herewith their separate Motion for an Order to Certify a Question of Law to the Supreme Court of Georgia, and Defendants' Memorandum of Law in Support of their Motion.

## III. The factors to be considered in granting injunctive relief do not favor the entry of a preliminary injunction

Plaintiffs have failed to establish that there is a candidate, similarly situated to Abrams, who enjoys a constitutionally impermissible advantage over her in the only contest in which she is guaranteed to be on the ballot. While the submitted declarations contend that she *is* the Democratic gubernatorial nominee who will be on the ballot in November 2022, Plaintiffs

have presented no evidence nor argument that Georgia law recognizes that declarative statement as possessing *any* legal import. Unlike the situation raised in *Davis v. FEC*, 554 U.S. 724 (2008), which featured prominently in this court's rationale for the grant of injunctive relief in *Perdue*, there can be no argument *here* that different campaign finance schemes exist for candidates currently "competing against each other." *Davis*, 554 U.S. at 738. Instead, Abrams is currently running unopposed *as a candidate under Georgia law* for the Democratic gubernatorial nomination, and Governor Kemp, *as a candidate under Georgia law*, faces three opponents in his quest for the Republican gubernatorial nomination. Regardless of how their political consultants may wish to frame the messaging in their political advertisements, Abrams and Kemp are not currently competing against each other on the ballot with disparate contribution limits in the manner envisioned as impermissible by the *Davis* court.

Furthermore, even if Abrams could be found to be similarly situated to Kemp in a manner that might implicate the *Davis* analysis, this court's prior order in *Perdue* has eliminated any constitutional impermissibility in the leadership committee statute until after the conclusion of the primary election cycle, as Georgians First is restrained in its activities against not just former Senator Perdue but against any opponent through the conclusion of the

primary election cycle *and* is further restrained in advocating *for* the election of Governor Kemp. *Perdue v. Kemp*, No. 1:22-CV-0053-MHC (N.D. Ga.), Doc. 58, pp. 38-39.

In terms of the prospect of "irreparable injury," Abrams has likewise failed to articulate a cognizable injury that she is suffering which is not also suffered by every gubernatorial candidate currently qualified, either by dint of statutory proscription or by judicial injunction. Abrams may very well enjoy an actual advantage due to the leadership committee statute and the *Perdue* order, as it is likely that she will be eligible to operate unfettered a leadership committee statute following the certification of the May general primary results but there exists a not unrealistic scenario in which Georgians First remains constrained in the operation of its leadership committee until the certification of the general primary runoff set to be conducted on June 21, 2022. As such, none of the Plaintiffs can establish an actual injury until there is an election contest set to occur that will involve candidates *competing against* Abrams, and at that point in the general election cycle, Abrams unquestionably will be within the ambit of the leadership committee statute.

Even were this Court to agree with Plaintiffs that O.C.G.A. § 21-5-34.2 contains a constitutional flaw that should be remedied by declaratory or injunctive relief, the sought injunctive relief would drastically and

impermissibly shift elements of Georgia's campaign finance regimen in favor of Abrams. Neither the balancing of the harms nor the public interest analysis of the preliminary relief inquiry, merged in their analysis where the government is the party sought to be enjoined, *see State of Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1293 (11th Cir. 2021)*, favor the granting of relief here.

Georgia, like other states, enacts electoral legislation designed to ensure the "fair, legal, and orderly conduct of primaries and elections." O.C.G.A. § 21-2-31(2). The federal courts, when considering requests to enjoin the operation of enacted laws, likewise conduct their work with the goal of ensuring that any relief ordered would serve the "public interest in an orderly and *fair* election." *Coalition v. Kemp*, No. 1:21-cv-02070-JPB, 2021 U.S. Dist. LEXIS 125873, at *11 (N.D. Ga. July 7, 2021) (quoting *Curling v. Kemp*, 334 F. Supp. 3d 1303, 1326 (N.D. Ga. 2018) (emphasis added); *accord Storer v. Brown*, 415 U.S. 724, 730 (1974) (recognizing the public interest in, and the concomitant restraints on judicial authority to enjoin, regulation designed to ensure "fair and honest" elections). A necessary corollary to the limits on the federal judiciary's ability to remedy state regulation that may create a process that is unfair is that the requested judicial relief cannot create such an imbalance and solidify an unfair

electoral process, but that is exactly the result that would accrue from the requested relief sought by Plaintiffs.

While couching the rationale for relief in the guise of accepting contributions for the nascent leadership committee, enjoining *these* Defendants from enforcing any aspect of O.C.G.A. § 21-5-34.2 in relation to Plaintiffs' leadership committee would have the effect of permitting Abrams, through the end of the primary election cycle between Governor Kemp and former Senator Perdue, to engage, via judicial order, in precisely the type of activity that Governor Kemp's leadership committee is enjoined from conducting. *Compare* Compl., Doc. 1. *Ad damnum clause* C, Pl.'s Mot., Doc. 9, p. 26, Pl.'s Prop. Order, Doc. 9, p. 2) *with Perdue v. Kemp*, No. 1:22-CV-0053-MHC (N.D. Ga.), Doc. 58, pp. 38-39. Plaintiffs seek injunctive relief that would, by necessary operation, permit their leadership committee to not only solicit and accept the contributions permissible under Georgia law, they would also, because of the structure of Chapter 5 of Title 21 and the lack of statutory constraints as to leadership committee *expenditures* within either O.C.G.A. § 21-5-34.2 or the companion provisions of Georgia campaign finance law, be permitted prior to the conclusion of the primary runoff process to offset expenses of the Abrams Campaign, expressly advocate for the election of Abrams, and expressly advocate for the defeat of any of the four potential

Republican gubernatorial nominees, all while Governor Kemp's leadership committee is expressly prohibited from engaging in *any* of that conduct by this Court's prior order in the *Perdue* litigation.

Thus, rather than alleviating any harm caused by the State's alleged failure to prematurely recognize Abrams as the Democratic gubernatorial nominee two months prior to the conduct of the primary election, Plaintiffs seek relief that would significantly impair the ability of the State to conduct a fair and honest electoral process, through the conclusion of the general primary process, that is the expressed goal of both Georgia's elected representatives and the federal judiciary. Absent a state law determination that Abrams is in fact the Democratic gubernatorial nominee, her Complaint seems to be in want of any actual harm. Governor Kemp's leadership committee is enjoined, through the end of the primary election process, from expending monies in the manner envisioned by the leadership committee statute, at least in support of his own candidacy or in opposition to any of his qualified opponents. Neither the Commission nor the Attorney General (nor, for that matter, any other State actor) appear to possess any authority to constrain Plaintiffs' leadership committee in the *expenditure* of funds, and the sought relief by Plaintiffs contains no judicial constraint, even were one to be possible given the posture of and the parties in this litigation, on the permissible expenditure of funds by

Plaintiffs' nascent leadership committee. As such, not only would Plaintiffs' requested relief result in a wholly inequitable allotment of permissible electoral activities and expenditures between the Abrams Campaign and Governor Kemp's campaign through the end of the primary electoral process, it would also significantly hamper the State's ability to ensure a fair and honest electoral process, at least from a campaign finance perspective, through the end of the general primary cycle. Accordingly, neither the balancing of the harms nor the public interest components of the test for granting injunctive relief favor granting Plaintiffs' requested relief.

## CONCLUSION

The Motion for a Preliminary Injunction should be denied because Plaintiffs have failed to establish standing to bring this action against the named Defendants. Similarly, their sought relief would not serve the public interest and would exacerbate, rather than alleviate, any alleged harm accruing as a result of the statutory framework. Additionally, this Court should grant Defendants' Motion for a Certified Question to the Supreme Court of Georgia regarding whether, under *Georgia* law, the sole qualified candidate for a party's nominee for Governor may establish a leadership committee pursuant to O.C.G.A. § 21-5-34.2 prior to the certification of final results of the primary election.

Respectfully submitted this 29th day of March, 2022.

<div style="margin-left: 40%;">

Christopher M. Carr
Attorney General
Georgia Bar No. 112505

Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580

Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280

*/s/Elizabeth T. Young*
Elizabeth T. Young
Assistant Attorney General
Georgia Bar No. 707725
Georgia Department of Law
40 Capitol Square SW
Atlanta, GA  30334
eyoung@law.ga.gov
Telephone: 404-458-3425

*/s/ Elizabeth Vaughan*
Elizabeth Vaughan
Assistant Attorney General
Georgia Bar No. 762715
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334
evaughan@law.ga.gov
Telephone: 404-458-3549

*Attorneys for Defendants*

</div>

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/ Elizabeth Wilson Vaughan*