**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ONE GEORGIA INC., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> CHRISTOPHER M. CARR, in his official capacity as Attorney General of Georgia, *et al.*, <br><br> *Defendants*. | CIVIL ACTION <br><br> No. 1:22-CV-1130-MHC |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR AN ORDER TO CERTIFY A QUESTION OF LAW TO
THE SUPREME COURT OF GEORGIA**

Plaintiffs One Georgia, Inc. ("One Georgia"), AFG Group Inc., d/b/a Abrams for Governor (the "Abrams Campaign"), and Stacey Abrams have sued over their "concern" about the "uncertainty" of whether One Georgia can operate as a leadership committee pursuant to O.C.G.A. § 21-5-34.2, as they claim that Abrams is the nominee of the Democratic Party of Georgia ("DPG"). (*See* Compl., Doc. 1, ¶ 50.)  Plaintiffs assert this despite a complete absence of cited authority in Georgia law for the proposition that someone can be unilaterally declared nominee and general election candidate despite the fact that the General Primary to declare the nominees of the respective major political parties in Georgia will not even be held until May 24, 2022.  A determination of whether Abrams can operate a leadership committee at this juncture is a state law question best considered by Georgia courts making a determination on the interpretation of the applicable Georgia law.  This is doubly so where any determination that Abrams is the nominee of the Democratic Party of Georgia may have other state law ramifications on the ability of her campaign committee to accept donations as a candidate for *nomination* in a primary election rather than treating the nomination process as already concluded.

As discussed herein, Defendants respectfully submit that this question of Georgia law should be presented as a certified question to the Supreme

Court of Georgia, prior to this Court's ruling on the question of preliminary injunctive relief. The arguments made herein by Defendants are also included in Defendants' Response in Opposition to Plaintiffs' Motion for a Preliminary Injunction, which is filed contemporaneously herewith.

## BACKGROUND

**A.    Georgia Law on Leadership Committees**

Effective July 1, 2021, O.C.G.A. § 21-5-34.2 permitted the creation of leadership committees, "chaired by the Governor, the Lieutenant Governor, **the nominee of a political party for Governor selected in a primary election** in the year in which he or she is nominated, or the nominee of a political party for Lieutenant Governor selected in a primary election in the year in which he or she is nominated." O.C.G.A. § 21-5-34.2(a)(emphasis added).[1]    A leadership committee may accept contributions or make expenditures for the purpose of affecting the outcome of any election or advocating for the election or defeat of any candidate...." O.C.G.A. § 21-5-

---

[1] The majority caucus of the House of Representatives, the minority caucus of the House of Representatives, the majority caucus of the Senate, and the minority caucus of the Senate can also designate up to two political action committees as "leadership committees." *Id.* The Senate minority caucus' committee is also authorized to accept contributions and make expenditures for the purpose of advocating for Abrams' election or against her opponent without being subject to campaign contribution limits. *See* O.C.G.A. § 21-5-34.2(a), (d).

34.2(d). A leadership committee must register with the Commission upon receiving contributions or making expenditures in excess of $500.00, and thereafter file periodic reports disclosing contributions and expenditures. O.C.G.A. § 21-5-34.2(e).   The contribution limits in O.C.G.A. § 21-5-41 ordinarily applicable to candidates and their campaign committees do not apply to a leadership committee's contributions or expenditures in support of a candidate or a group of named candidates.   *Id.*   A leadership committee can defray ordinary and necessary expenses incurred in connection with any candidate's campaign for elective office and may defray ordinary and necessary expenses incurred in connection with a public officer's fulfillment or retention of that office.   O.C.G.A. § 21-5-34.2(d).

**B.    Allegations in Complaint and Plaintiffs' Motion for Preliminary Injunction**

In their Motion, Plaintiffs acknowledge that this Court has already "partially enjoined enforcement of the LC Statute [O.C.G.A. § 21-5-34.2] by forbidding Georgians First [. . .] from newly-spending funds it had raised against his opponents until after the end of the primary." (Pl.'s Mot., Doc. 9, p. 4.) Despite the fact that they have acknowledged that this Court has already determined the scope of relief it believes to be appropriate to redress any injuries caused by a claimed violation of O.C.G.A. § 21-5-34.2, Plaintiffs

request an entirely different form of relief. Rather than seeking to enjoin Governor Kemp's leadership committee from benefiting from what they describe as the LC statute's "inequitable scheme" (*id.,* p. 19), Plaintiffs instead ask this Court to permit them to enjoy the benefits of O.C.G.A. § 21-5-34.2 and by consequence in a manner that is judicially forbidden for Governor Kemp, a potential Republican gubernatorial nominee, by prior order of this court. (*Id.*, p. 4-5.)

Plaintiffs contend that this relief is appropriate because as the leadership committee chaired by an incumbent Governor, O.C.G.A. § 21-5-34.2 allows Georgians First to "raise and spend[2] more funds than any other candidate until at least May 24, 2022 [the date of the primary election], including by raising unlimited funds for the express purpose of opposing and defeating Ms. Abrams." (Compl., Doc. 1, ¶¶ 5, 24.)  Plaintiffs contend that "Georgians First has already spent more than a million dollars on advertisements in an effort to damage the prospects of [Governor Kemp's] political opponents."  (*Id.*, ¶ 24.)[3]  However, One Georgia "began accepting

[2] This argument conveniently omits the proscriptions judicially placed on expenditures of Governor Kemp's leadership committee by prior order of this court.

[3] While there is not yet any evidence in the record as to which political opponent(s) have been targets of this million-dollar advertising campaign,

4

contributions shortly after the qualifying period concluded." (*Id.*, ¶ 7.)

On March 8, 2022, Abrams qualified to seek the nomination of the Democratic Party of Georgia to stand for election as Governor of Georgia. (Compl., Doc. 1, ¶46). On March 11, 2022, the qualification period for Democratic Party of Georgia gubernatorial candidates closed without any persons other than Abrams having qualified for nomination. (*Id.*, ¶ 47).

On March 16, 2022, One Georgia submitted a registration form seeking to register One Georgia as a leadership committee with the Commission using the Commission's online submission portal. (Compl., Doc. 1, ¶ 52).  Counsel for Plaintiffs then contacted Robert Lane, Deputy Executive Director and General Counsel for the Commission to inquire whether the Commission intended to reject or delete the registration. (Compl, Doc. 1, Exhibit B, p. 6). Plaintiffs' counsel provided an affidavit from the chair of DPG stating that when a sole candidate is declared and qualified for office, DPG "customarily" declares and recognizes that sole qualifier to be the Democratic nominee, and that as the

---

Defendants note that Republican gubernatorial primary candidate David Perdue has made the claim that he, not Ms. Abrams, has been the target of the million-dollar advertising campaign. *See Perdue v. Kemp*, United States District Court, Northern District of Georgia, Civil Action File No. 1:22-cv-00053-MHC [Doc. 1, ¶29]

sole qualifying candidate, DPG recognizes[4] Abrams as the Democratic party nominee for Governor of the State of Georgia. (Compl., Doc. 1, Exhibit A, ¶¶ 6-8).

## ARGUMENT

**I.**   **If Plaintiffs do have standing, this Court should certify to the Georgia Supreme Court the question of whether O.C.G.A. § 21-5-34.2 permits Abrams to establish a leadership committee as a political party nominee prior to completion of the primary election.**

The Georgia statute authorizing the creation of leadership committees is a new law, having only become effective on July 1, 2021.  Assuming they can survive the threshold questions of standing as raised in Defendants' Response in Opposition to Plaintiffs' Motion for a Preliminary Injunction, Plaintiffs present a novel question regarding Georgia law which has yet to be considered by the Supreme Court of Georgia – whether the sole qualified candidate for a party's nominee for Governor may be declared or "recognized" as the nominee, under Georgia law, for a political party *prior* to the conclusion and certification of the general primary process and whether such a "recognized" nominee may establish a leadership committee pursuant to O.C.G.A. § 21-5-34.2 prior to the

---

[4] Plaintiffs have not cited any Georgia authority either bearing on the effect of this "recognition" for the leadership committee statute or even finding that such a "recognition" is cognizable under Georgia law for *any* purpose.

certification of the results of the primary election.

Until such time as there is a basis *in Georgia law* for affording Abrams the benefits of the leadership committee statute, the only election for which her candidacy is currently viable, that for the nomination *to become* the Democratic Party of Georgia's gubernatorial nominee at this November's general election, she is placed at no disadvantage to any other similarly situated candidate, extant or not, who is seeking that nomination.  In terms of whether she can precipitately claim the rights and privileges of nomination prior to the conclusion of the general primary process in order to enjoy the benefits of the leadership committee statute, already denied in operation to the only other extant gubernatorial leadership committee by prior order of this court, while at the same time enjoying the benefits of *not* being the nominee by continuing to solicit and accept up to $7,600[5] in contributions for the primary election is a novel issue under Georgia law.  It is incumbent to determine the proper interpretation and application of Georgia law to certify the intertwined issues of whether Abrams can engage in conduct pursuant to the leadership

---

[5] The statutory cap on contributions for statewide candidates found at O.C.G.A. § 21-5-41(a) is adjusted for inflation by the Georgia Government Transparency and Campaign Finance Commission following the conclusion of each biennial election cycle, and it was set in September 2021 for the 2022 election cycle by the Commission at $7,600 for the primary election and $7,600 for the general election.

committee statute and whether a precipitate "recognition" of her as nominee will impact her ability to continue to raise and expend funds for the primary election even though the party whose nomination she either seeks or holds has already declared her the victor.

When substantial doubt exists about the answer to a material state law question upon which the case turns, a federal court should certify that question to the state supreme court in order to avoid making unnecessary state law guesses and to offer the state court the opportunity to explicate state law. *Forgione v. Dennis Pirtle Agency, Inc.*, 93 F.3d 758, 761 (11th Cir. 1996) (citing *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916–17 (11th Cir. 1995)). "Only through certification can federal courts get definitive answers to unsettled state law questions. Only a state supreme court can provide what we can be assured are 'correct' answers to state law questions, because a state's highest court is the one true and final arbiter of state law." *Forgione*, 93 F.3d at 761 (quoting *Sultenfuss v. Snow*, 35 F.3d 1494, 1504 (11th Cir. 1994) (en banc) (Carnes, J., dissenting)).   In other words, when a federal court is presented with a question of state law that has not yet been decided by the state supreme court, the federal district court can either (1) make an educated guess as to what the state supreme court would have decided had it been presented with the question, or (2) employ abstention or certification

8

procedures and allow the state supreme court to decide the issue directly.

Georgia law permits federal courts to certify questions of law to the Georgia Supreme Court when "there are no clear controlling precedents," as to a question of law that is "determinative of the case"; the Georgia Supreme Court is authorized to answer such questions by written opinion. *Jackson Nat'l Life Ins. Co. v. Crum*, 25 F.4th 854, 862 (11th Cir. 2022) (citing O.C.G.A. § 15-2-9(a)).[6]  For the reasons discussed herein, if this Court finds that Plaintiffs have established standing for a case or controversy, Defendants request that this Court enter an Order, pursuant to Defendants' separately filed motion, certifying this question to the Supreme Court of Georgia and abstain from ruling on Plaintiffs' Motion for a Preliminary Injunction while the determination on the certified question is pending.

II.   **Certifying the question avoids this Court having to make an unnecessary "*Erie* guess" and to offer the state court the opportunity to interpret or change existing law.**

Under Eleventh Circuit precedent, courts "should certify questions to the

---

[6] *See* Ga. Supreme Ct. R. 46 ("When it shall appear to the Supreme Court of the United States, or to any District Court or Circuit Court of Appeals of the United States, or to any state appellate court, that there are involved in any proceeding before it questions or propositions of the laws of this State which are determinative of said cause and there are no clear controlling precedents in the appellate court decisions of this State, such court may certify such questions or propositions of the laws of Georgia to this Court for instructions.")

state supreme court when we have substantial doubt regarding the status of state law.'" *Jackson Nat'l Life Ins. Co. v. Crum*, 25 F.4th 854, 862–63 (11th Cir. 2022) (quoting *Whiteside v. GEICO Indem. Co.*, 977 F.3d 1014, 1018 (11th Cir. 2020) (additional citation quotation marks omitted)). Certifying questions is a useful tool to avoid making unnecessary "*Erie* guesses." *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 916 (11th Cir.) (11th Cir. 1995 (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)). Furthermore, certifying questions offers the state court the opportunity to interpret or change existing state law. *Crum*, 25 F.4th at 862-63 (citing *Whiteside*, 977 F.3d at 1018).

In contrast, a federal court "risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court. *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 79 (1997) (citing *Rescue Army v. Municipal Court of City of Los Angeles*, 331 U.S. 549, 573–574 (1947)). "Speculation by a federal court about the meaning of a state statute in the absence of prior state court adjudication is particularly gratuitous when ... the state courts stand willing to address questions of state law on certification from a federal court." *Arizonans for Off. Eng.*, 520 U.S. at 79 (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 510 (1985) (O'Connor, J., concurring)). As discussed above, the Supreme Court of Georgia stands ready to accept certified questions from this Court where there are no controlling precedents in Georgia

10

appellate court decisions.  O.C.G.A. § 15-2-9(a); Ga. Supreme Ct. R. 46.

"The final arbiter of state law is the state supreme court, which is another way of saying that [Georgia] law is what the [Georgia] Supreme Court says it is." *Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997).  As such, Defendants respectfully submit that, because the only authoritative voice on Georgia law is the Supreme Court of Georgia, "it is axiomatic that that court is the best one to decide issues of [Georgia] law." *Id*.

Finally, as discussed *supra*, certification results in a final determination as to whether Abrams can be unilaterally and precipitately "declared" the gubernatorial nominee two months prior to the conduct of the primary election which will likely also determine the effect of such a declaration, if permissible under Georgia law, on the campaign contribution limits of donors to Abrams. Georgia law breaks the contribution limits out by election cycle, with specific dollar limits applicable to contributions for *candidates* in a primary election and an additional limit for contributions made for *candidates* in a general election.  *See* O.C.G.A. § 21-5-41(a).  If Abrams is determined to be the general election nominee of the Democratic Party of Georgia prior to the conduct of the general primary, it is likely that will affect her campaign's ability to continue accepting donations as a candidate for nomination once that nomination has

been secured and "declared."  The interplay of these campaign finance statutes, and the application of any precipitate nomination declaration, are issues solely of state law, and consideration of their application and interplay should be the province of Georgia's highest court unless it first declines to issue such a ruling.

## III.   Eleventh Circuit precedent favors certification.

Defendants acknowledge that the gubernatorial election cycle is fast approaching and respectfully submit that certification of the question by this Court could avoid needless delay.  However, the state law issue of whether O.C.G.A. § 21-5-34.2 permits the sole qualified candidate for a party's nominee for Governor to have a leadership committee prior to the primary election date is the unavoidable issue at the very heart of Plaintiffs' case.  The question of how O.C.G.A. § 21-5-34.2 should be applied in these specific circumstances is the threshold, dispositive issue in this case – and whether Plaintiffs has any federal law claims at all hinge on this determination of state law.

The Eleventh Circuit favors the practice of certifying questions and has, at certain periods of time, used the certification process more than any other circuit of appeals. *Nielsen*, 116 F.3d at 1413 (citing Jona Goldschmidt, AMERICAN JUDICATURE SOCIETY, *Certification of Questions of Law: Federalism in Practice* 28 (1995) (noting that during a five-year period "the Eleventh Circuit has by far certified the most questions (49) of any circuit," with the

average number certified by all circuit courts during the same period being 14.5)).  The Eleventh Circuit has certified questions of state law application to state supreme courts on appeal when the district court chose instead to make an *Erie* guess in lieu of district court certification.  *See, e.g., Gonzalez v. Governor of State of Georgia*, 969 F.3d 1211, 1212 (11th Cir. 2020) (certifying question to Supreme Court of Georgia regarding whether a statute conflicted with the Georgia Constitution); *Lefrere v. Quezada*, 582 F.3d 1260, 1268-69 (11th Cir. 2009) (certifying question of Alabama law to Alabama Supreme Court where district court had ruled on issue and denied motion to dismiss); *Escareno v. Noltina Crucible & Refractory Corp.*, 139 F.3d 1456, 1460-62 (11th Cir. 1998) (certifying question of Georgia law regarding appointment of administrator for deceased's estate to the Georgia Supreme Court where the district court dismissed the action); *Gossard v. Adia Servs.*, 120 F.3d 1229, 1231 (11th Cir. 1997) (certifying question regarding Florida law on tortious interference to Florida Supreme Court after district court conducted jury trial and entered judgment); *Mosher*, 52 F.3d at 916-17 (certifying question of Florida law to the Florida Supreme Court where district court granted summary judgment).  Delaying certification to obtain finality on the application of Georgia law until such time as this case reaches the Eleventh Circuit injects both delay and uncertainty into the electoral process, of which

13

the campaign finance regulations are an integral part, impacting candidates, committees, donors, vendors, and, not least of all, the public at large, who have a right to expect finality in the judicial process at the earliest possible opportunity rather than decisions seemingly accruing to the advantage of one party that may be eradicated or constrained by a subsequent ruling from the court with ultimate say on the application of the at-issue law(s).

## IV. Certifying the question regarding the application of O.C.G.A. § 21-5-34.2 can be completed by the Georgia Supreme Court in a timely manner.

Georgia Supreme Court rules provide for expedited treatment of certified questions in the same manner as provided for direct appeals. *See* Ga. Supreme Ct. R. 48 (procedure for certified questions shall be docketed like other cases and rules related to oral arguments, briefs, and motions in direct appeals shall apply) and Ga. Supreme Ct. R. 65 (upon good cause shown, the Georgia Supreme Court will enter such orders as will further expedite the processing of these cases). In prior election-related cases, the Georgia Supreme Court has been receptive to expedited treatment when an election is pending. *See generally Kemp v. Gonzalez*, 310 Ga. 104, 113-14, (2020) (answering certified question from the Eleventh Circuit by decision entered October 8, 2020, after granting August 19, 2020 motion to expedite, in advance of state-wide general

election)[7]; *Cox v. Barber*, 275 Ga. 415, 416 (Ga. 2002) (expediting review in order to render decision in advance of an election to be held the following week); *Haynes v. Wells*, 273 Ga. 106, 106 (2000) (expediting appeal and issuing ruling on November 1, 2000 in order to resolve issue before November 7, 2000 election). This Court should therefore not deprive the Georgia Supreme Court of the opportunity to fulfill its role as the true and final arbiter of Georgia law, at least without first giving it the opportunity to decide whether it will accept the question. If the Georgia Supreme Court declines to do so, this Court could then, in good conscience, proceed to decide the merits of this novel question of state law.

## CONCLUSION

Defendants hereby request that this Court grant Defendants' Motion for a Certified Question to the Supreme Court of Georgia regarding whether, under *Georgia* law, the sole qualified candidate for a party's nominee for Governor may establish a leadership committee pursuant to O.C.G.A. § 21-5-34.2 prior to the certification of final results of the primary election.

---

[7] The docket for *Kemp v. Gonzalez* reflects the granting of the motion to expedite and is accessible online at https://scweb.gasupreme.org:8088/results_one_record.php?caseNumber=S21Q0068

Respectfully submitted this 29th day of March, 2022.

Christopher M. Carr
Attorney General
Georgia Bar No. 112505

Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580

Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280

*/s/Elizabeth T. Young*
Elizabeth T. Young
Assistant Attorney General
Georgia Bar No. 707725
Georgia Department of Law
40 Capitol Square SW
Atlanta, GA  30334
eyoung@law.ga.gov
Telephone: 404-458-3425

*/s/ Elizabeth Vaughan*
Elizabeth Vaughan
Assistant Attorney General
Georgia Bar No. 762715
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334
evaughan@law.ga.gov
Telephone: 404-458-3549

*Attorneys for Defendants*

16

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

/s/ Elizabeth Wilson Vaughan

1