# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| ONE GEORGIA, INC., AFG GROUP INC d/b/a ABRAMS FOR GOVERNOR, and STACEY Y. ABRAMS,<br><br>        Plaintiffs,<br><br>   v.<br><br>CHRISTOPHER M. CARR, in his official capacity as the Attorney General of Georgia; JAMES D. KREYENBUHL, in his official capacity as Chairman of the Georgia Government Transparency and Campaign Finance Commission; ERIC L. BARNUM, in his official capacity as Vice Chair of the Georgia Government Transparency and Campaign Finance Commission; DARRYL HICKS, in his official capacity as a Member of the Georgia Government Transparency and Campaign Finance Commission; RICK THOMPSON, in his official capacity as a Member of the Georgia Government Transparency and Campaign Finance Commission; ROBERT A. WATTS, in his official capacity as a Member of the Georgia Government Transparency and Campaign Finance Commission; and DAVID EMADI, in his official capacity as Executive Secretary of the Georgia Government Transparency and Campaign Finance Commission,<br><br>        Defendants. | CIVIL ACTION FILE NO. 1:22-cv-01130-MHC<br><br><br>**JURY TRIAL REQUESTED**<br><br><br>**EMERGENCY RELIEF REQUESTED** |

**PLAINTIFFS' COMBINED BRIEF IN OPPOSITION TO MOTION TO CERTIFY A QUESTION TO THE SUPREME COURT OF GEORGIA AND REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## I.     INTRODUCTION

To expedite resolution and a hearing on Plaintiffs' Motion [9] seeking a preliminary injunction against enforcement of the LC Statute, O.C.G.A. § 21-5-34.2, and the Campaign Finance Act, O.C.G.A. § 21-5-1 *et seq.*, against any of them for operating, controlling, chairing, or otherwise using One Georgia, Inc. as a leadership committee registered under the LC Statute,[1] Plaintiffs submit this abbreviated Reply to Defendants' opposition brief [32] and response in opposition to Defendants' motion to certify a question to the Georgia Supreme Court [33, 33-1].

Plaintiffs appreciate the Court's order ([10] at 8) to expedite briefing on and adjudication of their motion for preliminary injunctive relief. Plaintiffs are experiencing ongoing harm as a result of abiding by Commission Defendants' order not to solicit or accept contributions through One Georgia ([1-3] at 5). Plaintiffs therefore submit this brief as soon as practicable following receipt late last night of Defendants' twin filings so they can in fact solicit and accept contributions without fear of suffering through enforcement proceedings or punishment for doing so now. Plaintiffs seek an expedited hearing via their contemporaneously-filed notice.

---

[1] Capitalized terms have the meaning assigned to them in Plaintiffs' Motion.

## II.    ARGUMENT AND CITATIONS TO AUTHORITY

### A.  Plaintiffs Have Standing to Sue Defendants.

Defendants are the proper parties for Plaintiffs to sue. Defendants claim they cannot redress Plaintiffs' injury. They ignore Plaintiffs' Complaint [1], which states that Defendants are responsible for the enforcement of the Campaign Finance Act generally and the LC Statute specifically. *E.g.*, Cmplt. ¶¶ 16-19 (citing provisions of Campaign Finance Act charging Defendants with interpreting, enforcing, and if necessary prosecuting Georgia campaign finance law). Defendants clearly have power and responsibility to enforce what Plaintiffs allege and show are unconstitutional applications of the LC Statute. Nothing more is required under applicable law. See *Rose v. Raffensperger*, 511 F. Supp. 3d 1340, 1356-57 (N.D. Ga. 2021) (a "state official is subject to suit in his official capacity when his office imbues him with the responsibility to enforce the law or laws at issue in the suit") (quoting *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) (citing *Ex Parte Young*)).

### 1.  Plaintiffs' Have Pleaded Cognizable Injuries-in-Fact.

Plaintiffs pleaded and submitted evidence supporting ongoing, irreparable injuries to their First and Fourteenth Amendment rights to engage in protected speech and association on the same terms as their political opponents, Governor

Kemp and his campaign and leadership committee, respectively. [1] ¶¶ 23-33, 54-58, 62-65, 70-76, 83-86; [9-1] ¶¶ 14-25. In their effort to dispute standing, Defendants make the remarkable concession that state law is unclear and imply that Plaintiffs are unlikely to suffer injury anyway: "One Georgia's premature actions alone would not be expected to result in an investigation or enforcement action alleging a violation of O.C.G.A. § 21-5-34.2." [32] (hereafter, "Opp.") at 14.[2] This is a striking admission that One Georgia's operation and registration as a leadership committee is rational and reasonable under the law, which would support, rather than defeat, Plaintiffs' claims for declaratory and injunctive relief. *See State Elec. Comm'n v. Moore*, 214 Ga. App. 236, 237-38 (1994) (requiring construction of Act in favor of those who must comply with it under Georgia "caselaw requiring that those who will be subjected to criminal or quasi-criminal penalties be given fair warning of what constitutes punishable conduct").

Notwithstanding this concession by the Commission in its briefing, uncertainty and risk of sanction continues to loom over One Georgia and the other Plaintiffs. For one, it is obvious and foreseeable that third-party complaints will be filed (or may have already been filed) alleging One Georgia's conduct is unlawful – which the *Commission* must then investigate. O.C.G.A. § 21-5-6(10)(A); Ga. Comp.

---

[2] Plaintiffs' pin cites are to page numbers in the ECF header of the cited document.

R. & Regs. 189-2-.03(5). For another, prior to suit being filed, the Commission's general counsel took the opposite position from that stated in its briefing – stating that Plaintiffs could not "commence fundraising" under law despite a good-faith reading of the LC Statute that Defendants now concede "would not be expected to result" in enforcement action. *Compare* [1-3] at 5 ("as we discussed earlier, Ms. Abrams' leadership committee One Georgia is not officially approved to commence fundraising pursuant to O.C.G.A. § 21-5-34.2(a)") *with* Opp. at 14.

Defendants urge the Court to find that Plaintiffs' uncertainty is insufficient to support preliminary injunctive relief (Opp. at 4, 11-14) yet still move for certification of a question of state law to the Georgia Supreme Court ([33]). But Plaintiffs have been uncertain of One Georgia's status since March 16, 2022, and expressed as much in their pre-suit communications. To that end, Defendants tell the Court they were awaiting legal guidance by "close of business" on March 21, 2022, Opp. at 9, but that representation does not appear in the Commission general counsel's email communications with Plaintiffs' counsel, and indeed, was never made to Plaintiffs' counsel; rather, Plaintiffs were first promised a response on Friday, March 18, only to receive an email *after* close of business Friday to wait until Monday. [1-3] at 1,

8.[3]  Having had the goalposts moved once, Plaintiffs were justified in expecting that they would likely be moved again even as Plaintiffs continued to suffer injury each passing day.

### 2. Plaintiffs' Injuries are Traceable to Defendants.

Just as clearly, Plaintiffs' ongoing injuries are traceable to Defendants. The injuries do not result from conduct of non-state actors, but from the obvious threat of enforcement by Defendants against One Georgia (chaired by Ms. Abrams) taking the same actions that Georgians First (chaired by Governor Kemp) may. The threat of enforcement of the LC Statute through the Act by Defendants acting in their official capacities as charged by the Act is obvious and credible. It is telling that Defendants and their counsel claim in the course of their arguments against Plaintiffs' standing that they have no ability to determine whether Ms. Abrams is the Democratic nominee for Governor (Opp. at 11-14), but immediately proceed to argue that Ms. Abrams is not the nominee, such that One Georgia may not lawfully operate (*id.* at 15-17).

---

[3] The Commission's apparent pique at Plaintiffs for filing suit rather than continuing to wait for a determination on the Commission's shifting timetable is no basis to deny injunctive relief for a constitutional infringement, in any event. The suggestion that Plaintiffs should have continued waiting also cannot be reconciled with the position the Commission now takes, that only the Georgia Supreme Court can decide whether One Georgia can be properly recognized as a leadership committee.

Whether or not Commission makes a final determination of whether Ms. Abrams is the Democratic nominee under the LC Statute themselves, it is *their* authority and charge to investigate and enforce that statute via the Act. [1] ¶¶ 16-19. That threat exists today; actual investigation and enforcement proceedings would result in further and additional injuries to Plaintiffs. And it is Commission Defendants' refusal to confirm the legal operating status of One Georgia that is unconstitutionally chilling Plaintiffs' speech.[4]

Given Defendants' reluctance to defend the challenged statute's unconstitutional application and preference to focus on the number of angels on the head of a "nominee," this is an important point: Plaintiffs' injuries arise from fear of unconstitutional enforcement of a statute against them, resulting in the chilling of protected speech and association, not from the failure of a different state actor to issue a proclamation of nominee status. The Commission, through its staff, stated that One Georgia could not "commence fundraising" under counsel's then-prevailing interpretation of the LC Statute. [1-3] at 5. This stopped One Georgia from further fundraising and certainly any thoughts of spending, and other Plaintiffs from coordinating or otherwise using One Georgia as well due to current *and*

---

[4] As explained in their Motion, and as the Court is aware, Plaintiffs need not wait for the law to be enforced against it. *See* [9] at 19-22; *see also SisterSong Women of Color Reprod. Just. Collective v. Kemp,* 410 F. Supp. 3d 1327 (N.D.Ga. 2019), *infra.*

threatened state conduct. Defendants' interpretation ignores the constitutional injuries they have caused and of which Plaintiffs complain. *See SisterSong Women of Color Reprod. Just. Collective v. Kemp*, 410 F. Supp. 3d 1327, 1338–40 (N.D. Ga. 2019) (explaining that plaintiffs "c[an] bring a pre-enforcement suit when he has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution," which is "quite forgiving" in the Eleventh Circuit and which is oft-created by the "discretion" afforded to officials charged with enforcement) (brackets in original) (citations and internal quotations omitted).

Defendants' reliance on *Lewis v. Gov. of Ala.*, 944 F.3d 1287 (11th Cir. 2019) is unavailing. The statutory provision closely examined there, the Alabama Minimum Wage Act, did not require or contemplate its enforcement by the defendant Alabama Attorney General. 944 F.3d at 1299. Chief Justice Pryor went so far as to distinguish statutes that police primary conduct (like the Act here, which charges Defendants with its enforcement), from a field preemption statute like that at issue in *Lewis*. *Id.* at 1306-07 (Pryor, C.J., concurring). And the *Lewis* court itself acknowledged *Doe v. Pryor* (also cited by Defendants) was not on point, as the Alabama Attorney General had expressly conceded the statute at issue was unconstitutional under controlling Supreme Court precedent. *Id.* at 1298.

### 3. An Injunction Against Defendants Would Redress Plaintiffs' Injuries.

As explained *infra,* the harm to Plaintiffs by Defendants' application of the LC Statute is continuing and increasing each day that One Georgia is chilled from accepting contributions as a registered leadership committee. Of course, an "injunction ordering any of the Defendants to allow Plaintiffs to operate a leadership committee under O.C.G.A. § 21-5-34.2" (at 17) would provide redress – that order would protect Plaintiffs from adverse legal proceedings that only Defendants are authorized and, indeed, compelled to investigate and prosecute. Such an injunction would also thaw the chilling effect on Plaintiffs of One Georgia being told it cannot raise funds, and allow them to engage in the same political speech and association authorized by the LC Statute for the incumbent's leadership committee (and therefore for the incumbent and his re-election campaign), without well-founded concern of prosecution.[5]

---

[5] Defendants raise in passing the question of "ripeness," and whether Plaintiffs "can survive" it. Opp. at 18. Defendants do not support this argument with any authority and do not even mention the concept again. Accordingly, it is a nullity. *Cf.* LR 7.1(A)(1), NDGa. In any event, the argument would lack merit because One Georgia has registered as a leadership committee and, despite having that registration accepted, been told by Defendants it cannot lawfully raise funds under the law, resulting in ongoing irreparable harm. This matter clearly is ripe.

The relief requested in Plaintiffs' Motion differs from that requested by Perdue. Defendants' suggestion (Opp. at 5) that the Court's Injunction should be deemed to have addressed all inequities created by the LC Statute in all circumstances attributes a remarkable intention to an Order which appears to have been intended to render narrowly tailored relief. The Court did not have Plaintiffs before it when it issued the Injunction (nor had One Georgia been registered), and so the Court had no occasion to consider whether One Georgia's registration and subsequent activity must be permitted under the U.S. constitution. And, the relief Plaintiffs seek here is consistent with the Injunction and would *restore* a more "orderly and fair election" (Opp. at 21) (citations and emphasis omitted). Unlike Defendants, Plaintiffs are confident that this Court can fashion an order granting preliminary injunctive relief that would permit equitable campaign finance opportunities among gubernatorial candidates and that comport with the U.S. Constitution.

**B. <u>Plaintiffs Have Demonstrated the Factors Necessary to Issue a Preliminary Injunction.</u>**

Plaintiffs need not recount their Motion here, as Defendants do not raise any arguments new to the Court. Plaintiffs address irreparable harm in Section C.2 *infra*.

Briefly: *First,* the claim that Governor Kemp and Ms. Abrams are not yet electoral opponents because the primaries have not ended (Opp. at 18-20) is ill-

supported and ignores the real world. This Court can take judicial notice of the multiple public statements by the incumbent that he is focused on defeating SYA as he seeks to retain his office. *E.g.,* [9] at 4 n.1 (Gov. Kemp, referring to Ms. Abrams: "We're not taking this for granted, but our sights are focused on who the real opponent is going to be.").

*Second,* Defendants misapprehend the Injunction, which prevents Georgians First from making certain expenditures "against any opponent through the conclusion of the primary election cycle," but does *not* cause "Georgians First [to be] restrained in its activities" (Opp. at 19) with regard to *accepting unlimited contributions.* Further, the LC Statute no more caps contributions which the incumbent's leadership committee may accept than it restricts later expenditures by Georgians First with the purpose of advocating the defeat of a qualified candidate that is not in the incumbent's own partisan primary.

The Injunction expressly permitted Georgians First to raise funds but not to spend them against Governor Kemp's opponents during the primary.[6] Injunction at

---

[6] Defendants remark in passing that Plaintiffs "conveniently omit" constraints placed on Georgians First by this Court via the Injunction. Mot. to Cert. at 5 n.2; *see also id.* at 8 . Not so. Plaintiffs' Complaint both accurately describes the capacities of a leadership committee under the LC Statute *and* clearly describes and refers to the Injunction and its prospective restriction of certain expenditures by Georgians First. [1] ¶¶ 37 ("This Court … enjoined Georgians First from expending funds through the end of the gubernatorial primary 'for the purpose of advocating for the re-election

38-40. This necessarily means Georgians First will spend them *after* the primary concludes – that is, against his "real opponent" in the general, the nominee of the adverse political party, Ms. Abrams. Indeed, that would be the very point of the fundraising in which Georgians First may engage now (and, given Commission Defendants' conduct, in which One Georgia may not): to engage in general election speech and association. The inequity and iniquity of the "different campaign finance schemes" governing candidates for the same office – one might call them opponents "competing against each other" – is apparent, and wrong.

*Third*, that "nominee" is undefined in the Georgia Election Code does not change the following: there is one declared, qualified candidate for the Democratic Party of Georgia nomination for Governor, Ms. Abrams; she is and has been declared the Party's nominee, by custom and by affidavit of the Party chair; and as Defendants admit, the LC Statute and the Georgia Election Code each provide for the unexpected death, disqualification, or withdrawal of a nominee for statewide public office prior to the close of a primary election. O.C.G.A. §§ 21-2-134(a)(2), (b)(2)(B), (b)(3) (withdrawal), 21-2-134(b)(1)(A) (death or disqualification); O.C.G.A. § 21-5-34.2(c) (disposition of leadership committee and its assets upon change in status).

---

of Governor Kemp or the defeat of an opponent of Governor Kemp' or 'to defray ordinary and necessary expenses incurred in connection with Governor Kemp's campaign for re-election.'") (quoting Injunction at 38-40).

The common dictionary definition of "nominee" at the time the General Assembly enacted the LC Statute means "to propose as a candidate for election to office." "Nominate, verb," MERRIAM-WEBSTER DICTIONARY (2022), available at https://www.merriam-webster.com/dictionary/nominee (last visited Mar. 30, 2022). Even the example given to illustrate that definition aptly describes the situation here: "We expect *the party* to *nominate* him for president." *Id.* (first emphasis added). The *party* is the body that nominates the candidate – not any State agency – in accordance with Georgia election rules requiring the party to choose its candidates for public office "in the primary preceding the general election in which the candidates' names will be listed on the ballot," and "in the same manner as prescribed by law." O.C.G.A. § 21-2-151(a)-(b).[7] This language reflects the requirement of the LC Statute that the party choose its nominee "in a primary election *in the year in which he or she is nominated*." O.C.G.A. § 21-5-34.2(a) (emphasis added). It also reflects the logic of a sole qualified and unopposed candidate for a nomination being treated as the nominee for purposes of determining what contributions and expenditures are proper (though Defendants choose not to address it in either of their March 29

---

[7] Notably, O.C.G.A. § 21-2-153.1, on which Defendants rely, also defers to party officials as the necessary persons to certify an unopposed municipal candidate as the nominee for the general election ballot. O.C.G.A. § 21-2-153.1(b) ("*[t]he proper officials of his or her political party shall certify* the candidate *as the party nominee* for the office involved") (emphasis added).

filings). *See* [9] at 9 (citing FEC advisory opinion construing "nominee" as "the only candidate under [state] law who could receive the Democratic nomination," such that the relevant statutory provision applied). With exactly one person who can be so nominated under Georgia election rules, Ms. Abrams is and indeed must be the Democratic Party of Georgia's lawful nominee.[8]

As for the public interest factor, there is no cognizable state interest in enforcing an unconstitutional statute. [9] at 24-25. Nothing in Defendants' lengthy section concerning whether relief can be "fair" (Opp. at 20-24) counsels against this Court using its equity powers to order preliminary injunctive relief to avoid unconstitutional application of the LC Statute from harming the constitutional rights of those candidates regulated under it to the benefit of the incumbent Governor. Indeed, this Court already has.

---

[8] It is beyond the scope of this reply, but Plaintiffs note that the associational rights of political parties would likewise be thrown into peril by a determination that the State can withhold designation as the party nominee of the sole candidate qualified under the party's and this State's law and rules to run for office, contrary to the party's custom and declaration and with significant effect on the party's political prospects and political speech. Unlike the white primary cases, *e.g. King v. Chapman,* 62 F. Supp. 639, 640 (M.D. Ga. 1945), *aff'd,* 154 F.2d 460 (5th Cir. 1946), wherein qualified electors of Georgia had their constitutional rights abridged or denied by party conduct (albeit under the pre-1964 Election Code), no voters are having their rights imperiled here. On the contrary, this case is about Plaintiffs seeking to invoke the benefits of state law for which they qualify. Indeed, here it is the *State agency's* decision infringing on the right of a candidate and must yield to federal constitutional law.

### C. **Certification to the Georgia Supreme Court is Inappropriate in These Circumstances.**

Defendants concede, as they must, that this Court may certify an unresolved question of state law to the Supreme Court of Georgia only if the question is "determinative of the case" and "there are no clear controlling precedents in the appellate court decisions of" Georgia. [33-1] (hereafter, "Mot. to Cert.") at 10 (citing O.C.G.A. § 15-2-9(a) and Ga. Sup. Ct. R. 46). This decision, and whether it will actually "promote judicial economy," is committed to this Court's sound discretion. *Whiteside v. GEICO Indem. Co.*, 352 F. Supp. 3d 1257, 1268 (M.D. Ga. 2018) (denying motion to certify question), *aff'd*, 847 F. App'x 810 (11th Cir. 2021). Certification is, however, appropriate only where there is *substantial* doubt about "a question of state law *upon which a particular case turns*." *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1268 (11th Cir. 2003) (emphasis added).[9] That is not the case here, for at least two reasons.

---

[9] That a question of state law raised by a plaintiff's claim is "novel" and has gone thus far unremarked upon by the highest court of a state is not and cannot be sufficient to certify a question to that same court. Were it otherwise, the criteria for certification named in O.C.G.A. § 15-2-9(a) would be mere surplusage and a federal court would have little need for its equitable powers, being reduced to a factory machine for applying law to facts and an abacus for any resulting monetary damages.

## 1. Whether Ms. Abrams Is the Democratic Nominee for Governor is Not Determinative of Plaintiffs' Constitutional Claims.

The case neither turns upon nor is determined by whether Ms. Abrams is the Democratic "nominee" for all purposes under the Act. This is a red herring; Defendants find it difficult to defend the statute they are charged with enforcing, so they attempt to shift the playing field to the parade of perceived horribles emanating from the commonsense conclusion that Ms. Abrams is the Democratic gubernatorial nominee.

Even assuming *arguendo* that Ms. Abrams were not her party's nominee until the primary formally concludes on May 24, or until the primary election results were certified several days later, Plaintiffs' constitutional injuries remain because the statute is deficient and protects just one person, the incumbent governor, to the detriment of his opponents. [9] at 4-5, 15-20; Injunction at 25. Defendants' chosen interpretation of the LC Statute is what has created Plaintiffs' constitutional injuries in the first place – adopting it here directly facilitates under color of law the ability of the incumbent Governor to speak more frequently and more loudly in his campaign to retain his office than his opponents seeking the same office may.

The crux of the constitutional harms Plaintiffs allege is the unconstitutional nature of the law itself: unlimited contributions for thee, but not for me. The LC Statute is unconstitutional because it permits the incumbent governor and lieutenant

governor to establish, chair, and coordinate with a committee that may accept contributions in unlimited amounts, while denying the same capacity to challengers for their offices. This inequity in differentiated contribution limits is "antithetical to the First Amendment," *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 744 (2008).

What's more, Defendant Commissioners' conduct has injured Plaintiffs' equal protection rights, which do not depend on Ms. Abrams being the Democratic nominee. It is enough that she is a challenger for the incumbent's public office whose political speech and association rights are being violated under color of law, when the incumbent's are not, in a manner that does not further a substantial interest and is not closely drawn to achieve any such interest. Cmplt. ¶¶ 78-86 & [9] at 17-20. Defendants' suggestion that Ms. Abrams "is placed at no disadvantage to any other similarly situated candidate, extant or not, who is seeking" nomination as the Democratic for Governor of Georgia is unpersuasive: *because there is no such qualified person*. *See* Mot. to Cert. at 8; *see also* [1] ¶¶ 12, 79 (alleging Ms. Abrams and other opponents of incumbent governor are similarly-situated). There is no one else who *can* hold that nomination. Comparison to candidates who are not "extant" is not the test for whether an "asymmetrical contribution scheme" imposes different

limits "on candidates vying for the same seat." Injunction at 16, 25 (quoting *Davis,* 554 U.S. at 734-35, 738, 743-44 (2008)).[10]

Even if this Court disagrees that Ms. Abrams became the Democratic gubernatorial nominee upon becoming the sole qualified candidate for that nomination, then, the harm to her First and Fourteenth Amendment rights wrought by the Commission Defendants' refusal to confirm that One Georgia may operate as a leadership committee remains ongoing, severe, irreparable, and contrary to the First and Fourteenth Amendments to the U.S. Constitution. Plaintiffs are therefore substantially likely to succeed on the merits of their case *regardless* of whether the Georgia Supreme Court were to opine and rule upon whether a qualified candidate

---

[10] Meanwhile, determining whether Plaintiffs AFG and Abrams may solicit and accept contributions designated for the 2022 primary election is not a question for the Georgia Supreme Court, but for Defendants; determining what contributions are and are not lawful under the Act falls directly under the powers and responsibilities assigned to their respective offices by O.C.G.A. § 21-5-6. Further, Commissioner Defendants have arguably already addressed this question through Ga. Comp. R. & Regs. 189-6-.02, "Contributions for Candidates Without Primaries," which permits a candidate "who will be on the general election ballot as a candidate in an election preceded by a primary election" to "accept contributions designated for such primary election even though such candidate does not appear on the primary ballot." In this analogous situation to an unopposed primary candidate, neither Defendant Commissioners nor, to Plaintiffs' knowledge, any affected candidate has required the time and attention of the Georgia Supreme Court to determine that a candidate that need not appear on a primary ballot may nevertheless solicit and accept contributions designated for the primary election.

for public office with no opponents in a partisan primary, like Ms. Abrams, becomes the nominee at some hour and date after the polls for the primary have closed.

The risk of "friction-generating error" in a statute that has not yet reached its first anniversary, that currently protects fundraising advantages for exactly one candidate at the expense of his opponents, is particularly low here where this Court has already found that statute's application wanting for constitutional compliance. Unlike in *Arizonans for Official English v. Ariz.*, 520 U.S. 43 (1997), Plaintiffs seek narrow preliminary relief against the unconstitutional *application* of the LC Statute, and not wholesale "invalidat[ion]," 520 U.S. at 79. Accordingly, this Court should rule on Plaintiffs' pending motion for a preliminary injunction. *See Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1891 n.7, 201 L. Ed. 2d 201 (2018) (declining to certify question to state supreme court where, *inter alia*, "the State has not offered sufficient reason to believe that certification would obviate the need to address the constitutional question"); *cf. High Ol' Times, Inc. v. Busbee*, 621 F.2d 135, 140 (5th Cir. 1980)[11] (reversing district court abstention on basis of perceived statutory ambiguity because "it is the duty of the federal court to exercise its properly invoked jurisdiction" where "a state court interpretation of the statutes would neither render

---

[11] This Court adopted as binding precedent all decisions of the United States Court of Appeals for the Fifth Circuit issued prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

unnecessary nor substantially modify the federal constitutional question") (cleaned up).

### 2. Certification to the Georgia Supreme Court Would Effectively Deprive Plaintiffs of the Relief They Seek.

Certification necessarily perpetuates the irreparable harm in this matter. The harm is ongoing and compounds each day. The idea that no injury can even be established until the general election cycle (Opp. at 20) misunderstands the nature of the injuries complained of and the practice of modern campaigns. As explained in detail both in Plaintiffs' declaration in support of its motion ([9-1] at ¶¶ 14-25) and in the timely amicus brief filed yesterday ([31] at 17-20), early fundraising matters a great deal for multiple reasons, with irreparable injury occurring as matters of law and practice when state actors instruct political actors not to engage in that protected political speech.

Of greater alarm perhaps is Defendants' assurance "that certification of the question by this Court could avoid needless delay." Mot. to Cert. at 13. Applicable law and experience counsel just the opposite.

When a federal court elects to "formulate the question" "determinative of said cause" and "certify[ies] such questions or propositions of the laws of Georgia to [the Supreme] Court for instructions" under Georgia law, *see* O.C.G.A. § 15-2-9(a) and Ga. Sup. Ct. R. 46, 47, any such questions are docketed and proceeded upon like

other cases. Under ordinary procedures, which the Georgia Supreme Court has no obligation to waive, the parties' briefs would be due over the 50 days following certification of the question, followed by mandatory oral argument and sufficient time for the Georgia Supreme Court to write and render an opinion. *Id.*, R. 10(1)-(3), 12, 48, 50(1)(f). Fifty days from the date of this reply is May 19, *five days before the polls close* in the 2022 general partisan primary.

Plaintiffs look to *Gonzalez v. Kemp,* a matter with which this Court is deeply familiar, as the primary example of the availability of an expedited decision on certification to the Georgia Supreme Court. Mot. to Cert. at 14-15. There, this Court issued a preliminary injunction in early July 2020 holding that a state statute was unconstitutional and requiring State defendants to "take all steps necessary to conduct the election" for District Attorney for the Western Circuit. *Gonzalez v. Kemp*, 470 F. Supp. 3d 1343, 1350–53 (N.D. Ga. 2020). State Defendants appealed, after which the Eleventh Circuit certified the question of state law this Court resolved on August 11, 2020. *Gonzalez v. State of Ga.,* 969 F.3d 1211 (11th Cir. 2020). By necessity, the relief ordered by this Court remained in effect and had to, else the relief ordered (an election for which ballots were first mailed out in September 2020) would have been nonexistent.

The Georgia Supreme Court subsequently agreed to expedite the appeal, but that expedition resulted in an opinion issuing on October 8, 2020, *58 days* after certification by the Eleventh Circuit (and after ballots had been mailed). *Kemp v. Gonzalez,* 310 Ga. 104 (2020). After the Supreme Court held the statute was unconstitutional, just as the District Court did, the Eleventh Circuit affirmed the order granting preliminary relief (on October 27, 2020, well after advance voting had begun). *Gonzalez v. Gov. of Ga.,* 978 F.3d 1266 (11th Cir. 2020). Compared to *Gonzalez,* Plaintiffs here have even less time to seek relief before that relief is mooted, further counseling against certification.[12] In any event, speculating about what a federal court of appeals will do at or after any stage of non-election cases (*see* cases collected at Mot. to Cert. at 14) is not the standard for certification. And it should go without saying that (for good reason) federal courts do not control the decisions of the Georgia Supreme Court of whether to accept certified questions and on what schedule to address them.

---

[12] Plaintiffs filed for a temporary restraining order and preliminary injunction mere days after the close of the qualification period and One Georgia's subsequent registration as a leadership committee. [1], [9]. Defendants imply Plaintiffs should have waited even longer, Opp. at 14, but given their opposition to Plaintiffs' motion and argument against Ms. Abrams being the "nominee" for purposes of the LC Statute, Plaintiffs can reasonably surmise that further delay would simply have furthered their harm and caused even greater urgency.

Plaintiff One Georgia is chilled from its speech because of Commission Defendants' instruction to Plaintiffs' counsel; time is all too short in this matter. Unlike the cases cited by Defendants, this is not an arcane question of the interaction of specific contract and insurance statutes,[13] or whether the timing of various state supreme court opinions did or did not invalidate parties' reliance on the unconstitutionality of a statute of repose in a given five-year window to prosecute products liability claims a decade later[14] (*see* Mot. to Cert. at 10-11). This is a question of whether an incumbent will be allowed to fundraise under one set of rules while the challenger he publicly acknowledges to be his main opponent, who is the Democratic nominee for his seat, will be constrained by state actors (some of whom the incumbent appointed) from fundraising under those same rules, justified by no permissible public interest and under rules not closely drawn to achieve that interest.

Once the eight weeks between this filing and May 24 are gone, and once the general "election occurs, there can be no do-over and no redress" for the harm

---

[13] "No Georgia case provides guidance on the question whether an illegal wagering contract exists when a terminally-ill insured has purchased a life insurance policy with the expectation that he will soon sell that policy to a speculator, but has purposely manipulated the timing of that sale to dodge any characterization of the transaction as being illegal." *Jackson Nat'l Life Ins. Co. v. Crum,* 25 F.4th 854, 862 (11th Cir. 2022).

[14] *See Mosher v. Speedstar Div. of AMCA Int'l, Inc.,* 52 F.3d 913, 915-16 (11th Cir. 1995), certified question accepted, 662 So. 2d 343 (Fla. 1995), and certified question answered, 675 So. 2d 918 (Fla. 1996).

suffered by Plaintiffs in the interim. *League of Women Voters of NC v. North Carolina*, 769 F. 3d 224, 247 (4th Cir. 2014). Certification of the question of when a candidate must in all circumstances (or even just these) become the nominee under state law when there is no qualified opponent for the nomination the candidate seeks is all but certain to moot this motion.

This cannot be the law; Plaintiffs respectfully submit this would not be just, either. Even if this question were appropriate for certification – it is not – Plaintiffs respectfully submit that the proper course is for this Court, already familiar with the problems the LC Statute has created, to rule on the pending Motion "at the earliest possible opportunity" (Mot. to Cert. at 15) and to permit a party to raise the question of certification anew once the Court has remedied the immediate harm to Plaintiffs or at least until the summer, when all qualified gubernatorial candidates will have either advanced past the partisan primary process or faced the end of their 2022 campaigns.

### III.   <u>CONCLUSION</u>

Plaintiffs need preliminary injunctive relief to halt to ongoing, irreparable, and severe constitutional injuries to their rights to freedom of speech, to freedom of association, and to equal protection. They have sued the proper parties; an order enjoining Defendants from enforcing O.C.G.A. § 21-5-34.2 against them for

operating or otherwise using One Georgia as the registered leadership committee it is prior to some nebulous future date when the unopposed gubernatorial Democratic primary has concluded will redress those injuries. Certification of the question, far from avoiding delay, would simply run out the clock on Plaintiffs' motion and deny them relief. Defendants fail to raise meritorious arguments against issuance of the exceptional – but appropriate – remedy of a preliminary injunction to halt Plaintiffs' ongoing injury.

For the foregoing reasons and those stated in its Motion [9], Plaintiffs respectfully request a hearing, that the Court grant its Motion, and that the Court enjoin Defendants as requested therein.

Respectfully submitted, this 30th day of March 2022.

**KREVOLIN & HORST, LLC**

**_Joyce Gist Lewis_**
Joyce Gist Lewis
Georgia Bar No. 296261
Adam M. Sparks
Georgia Bar No. 341578
1201 W. Peachtree Street, NW
3250 One Atlantic Center
Atlanta, Georgia 30309
(404) 888-9700
(404) 888-9577 (facsimile)
jlewis@khlawfirm.com
sparks@khlawfirm.com
_Attorneys for Plaintiffs_

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of LR 5.1, NDGa, using font type of Times New Roman and a point size of 14.

Dated: March 30, 2022                    **Joyce Gist Lewis**
                                         *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have on this date caused to be electronically filed a copy of the foregoing **PLAINTIFFS' COMBINED BRIEF IN OPPOSITION TO MOTION TO CERTIFY A QUESTION TO THE SUPREME COURT OF GEORGIA AND REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to counsel of record.

Dated: March 30, 2022                    **Joyce Gist Lewis**
                                         *Attorneys for Plaintiffs*