IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ONE GEORGIA, INC.; AFG
GROUP INC. d/b/a Abrams for
Governor; and STACEY Y.
ABRAMS,

     Plaintiffs,

v.

CHRISTOPHER M. CARR, in his
official capacity as the Attorney
General of Georgia; JAMES D.
KREYENBUHL, in his official
capacity as Chairman of the Georgia
Government Transparency and
Campaign Finance Commission;
ERIC L. BARNUM, in his official
capacity as Vice Chair of the Georgia
Government Transparency and
Campaign Finance Commissions;
ROBERT A. WATTS, in his official
capacity as a Member of the Georgia
Government Transparency and
Campaign Finance Commission;
DARRYL HICKS, in his official
capacity as a Member of the Georgia
Government Transparency and
Campaign Finance Commission.
RICK THOMPSON, capacity as a
Member of the Georgia Government
Transparency and Campaign
Finance Commission; DAVID

CIVIL ACTION FILE

NO. 1:22-CV-1130-MHC

**EMADI, in his official capacity as
Executive Secretary of the Georgia
Transparency and Campaign
Finance Commission; and
GEORGIANS FIRST LEADERSHIP
COMMITTEE, INC.,**

      **Defendants.**

## ORDER

This case comes before the Court on Plaintiffs' Second Motion for

Preliminary Injunction ("Pls.' Second Mot. for Prelim. Inj.") [Doc. 51].

## I.    BACKGROUND

### A.    Introduction

This is the third iteration of a series of constitutional challenges to O.C.G.A.

§ 21-5-34.2, which became effective on July 1, 2021, and has been referred to in

this litigation as the "LC Statute." The LC Statute provides for the creation of a

"leadership committee" which "may accept contributions or make expenditures for

the purpose of affecting the outcome of any election or advocating for the election

or defeat of any candidate . . . ." O.C.G.A. § 21-5-34.2(d). A "leadership

committee" is defined as:

> a committee, corporation, or organization chaired by the Governor, the
> Lieutenant Governor, the nominee of a political party for Governor
> selected in a primary election in the year in which he or she is
> nominated, or the nominee of a political party for Lieutenant Governor
> selected in a primary election in the year in which he or she is

2

nominated.  Such term shall also mean up to two political action committees designated by the majority caucus of the House of Representatives, the minority caucus of the House of Representatives, the majority caucus of the Senate, and the minority caucus of the Senate.  No person may chair more than one leadership committee.

O.C.G.A. § 21-5-34.2(a).

A leadership committee must register with the Georgia Government Transparency and Campaign Finance Commission (the "Commission") within ten days of beginning to accept contributions and must disclose contributions or expenditures in excess of $500.00.  Id. § 21-5-34.2(e).  A key component of the LC Statute is that "[t]he contribution limits in Code Section 21-5-41 shall not apply to contributions to a leadership committee or expenditures made by a leadership committee in support of a candidate or a group of named candidates," meaning that a leadership committee may accept contributions in any amount and is not bound by the current monetary limitation of $7,600 imposed upon candidates for statewide office and their campaign committees.[1]

---

[1] Candidates for statewide office and their campaign committees are limited in the amount of contributions they may obtain from an individual contributor.  Although the maximum allowable contribution in the last amendment affecting the statutory contribution limits was $5,000 for a primary election and $3,000 for a primary runoff election, Ga. Laws 2000, p. 1491 (eff. Jan. 1, 2001), codified at O.C.G.A. § 21-5-41(a)(1), (2), "the contribution limitations in this Code section shall be raised or lowered in increments of $100.00 by regulation of the commission pursuant to a determination by the commission of inflation or deflation during such cycle or four-year period, as determined by the Consumer Price Index published by

The only individual candidates for statewide office who are authorized to form leadership committees and can raise unlimited amounts of contributions under the LC Statute are the Governor, the Lieutenant Governor, and the nominees of a political party for those two offices who are chosen in a primary election. Id. § 21-5-34.2(a).  Consequently, aside from Governor Brian Kemp and Lieutenant Governor Geoff Duncan, the LC Statute provides no other statewide officeholder or candidate for statewide office with the opportunity to form a leadership committee prior to the primary election.[2]  On July 8, 2021, Defendant Georgians First Leadership Committee, Inc. ("Georgians First") was established with Governor Kemp as its chairperson.  See Perdue v. Kemp, 1:22-CV-0053-MHC, 2022 WL 710959, at *3 (N.D. Ga. Feb. 7, 2022).  What this means is that Governor Kemp, as the incumbent, is able to raise unlimited funds through

---

the Bureau of Labor Statistics of the United States Department of Labor, and such limitations shall apply until next revised by the commission." O.C.G.A. § 21-5-41(k).  The current contribution limits for candidates for statewide elected office are $7,600 for a primary or general election and $4,500 for a primary or general runoff election.  See GEORGIA GOVERNMENT TRANSPARENCY & CAMPAIGN FINANCE COMMISSION, www.ethics.ga.gov/contribution-limits (last visited Apr. 25, 2022).

[2] It is undisputed that the Lieutenant Governor, Geoff Duncan, is not running for re-election and there is no evidence before this Court that he has formed a leadership committee.

Georgians First while every other candidate for Governor, whether running in the Republican or Democratic Primary, is limited to the $7,600 per individual contribution limit contained in O.C.G.A. § 21-5-41, until such candidate is chosen as the nominee of one of the political parties in the primary election.

**B.**   **Perdue v. Kemp**

On December 6, 2021, former United States Senator David Perdue ("Perdue") announced his intent to run for Governor of Georgia.  Id.  One month later, Perdue and his campaign committee filed a complaint challenging the constitutionality of the LC Statute because it permitted Governor Kemp, as the sitting Governor, to raise and spend unlimited funds through Georgians First in the Republican Party primary election for Governor while Perdue could raise only a maximum of $7,600 from an individual contributor for the same primary election. Id.

On February 7, 2022, this Court found that Perdue was likely to succeed on the merits of his claim that the LC Statute violated his rights under the First Amendment because (1) the LC Statute effectively negated the contribution limit imposed upon all candidates for Governor in the primary election for just one candidate, Governor Kemp, through his leadership committee, Georgians First; (2) the state failed to demonstrate a sufficiently important state interest to support

5

such a distinction; and (3) the statute was not closely drawn to serve any such purported interest. Id. at *8-13. The Court also found that Perdue established irreparable injury, the balance of harms favored Perdue, and the public interest supported the entry of the preliminary injunction. Id. at *13-14. The Court preliminarily enjoined Georgians First

> from expending funds beginning on the date of this Order (1) for the purpose of advocating for the re-election of Governor Kemp or the defeat of an opponent of Governor Kemp through the 2022 primary election and 2022 primary runoff election, if any there be, or (2) to defray ordinary and necessary expenses incurred in connection with Governor Kemp's campaign for re-election as Governor of Georgia though the 2022 primary election and 2022 primary runoff election, if any there be, until further Order of this Court.

Id. at *14. The preliminary injunction order stated that it did not prevent Georgians First from continuing to receive funds and make expenditures "in support of public officials other than Governor Kemp" nor make unlawful any expenditures made prior to the Court's Order to promote Governor Kemp's re-election or the defeat of an opponent of Governor Kemp. Id. The injunction was silent with respect to Georgians First's potential receipt of funds prior to the primary election for use in support of Governor Kemp or in opposition to one of his opponents in the general election.

**C.    <u>One Georgia v. Carr</u>, Phase One**

One Georgia, Inc. ("One Georgia") is a leadership committee chaired by Stacey Y. Abrams ("Abrams"), who is the only candidate to qualify for the Democratic Party's primary election for Governor.  Verified Compl. ("Compl.") [Doc. 1] ¶¶ 13, 15, 46, 51; Aff. of Nikema Williams (Mar. 15, 2022) [Doc. 1-2] ¶ 7.  One Georgia began accepting contributions once the qualifying period for candidacy for public office ended on March 11, 2022.  <u>Id.</u> ¶ 51.  Although One Georgia registered through the Commission's online portal and received confirmation of its registration, it attempted to obtain confirmation from the Commission that it could operate as a leadership committee under the LC Statute. <u>Id.</u> ¶¶ 52-54.  The Commission refused to give that assurance because Abrams has not yet been nominated as the Democratic Party's nominee for Governor in the primary election.  Email from Robert Lane to Adam M. Sparks (Mar. 17, 2022 at 12:59 AM) [Doc. 1-3 at 4].  Based upon the threat of potential enforcement proceedings by the Commission, One Georgia has not spent any funds in its possession.[3]  Compl. ¶ 56.

---

[3] At the hearing held on Plaintiffs' first motion for a preliminary injunction, Plaintiffs' counsel represented to the Court that One Georgia has not solicited or accepted any contributions since the Commission indicated that One Georgia could not commence fundraising under the LC Statute.

Plaintiffs brought their lawsuit against the Attorney General of Georgia and the members of the Commission (collectively, the "State Defendants") challenging the constitutionality of the LC Statute for many of the same reasons previously raised by the plaintiffs in <u>Perdue v. Kemp</u>.  Compl. ¶¶ 9-12, 73-75.  However, rather than name Georgians First as a defendant and seek to have this Court restrict Governor Kemp's ability to continue to raise unlimited contributions through Georgians First until and unless he is selected in the primary election as the Republican Party's nominee for Governor, Plaintiffs instead sought to have this Court enjoin the Commission from taking any administrative action in the event One Georgia continued to raise funds as Abrams's leadership committee prior to the primary election.  Pls.' Mot. for Prelim. Inj. [Doc. 9].

On April 14, 2022, this Court issued an Order which stated that "as did the plaintiffs in <u>Perdue v. Kemp</u>, Plaintiffs in this case are likely to be able to show that the LC Statute as applied is an impermissible infringement of Plaintiffs' First Amendment rights."  April 14, 2022, Order [Doc. 45] at 32.  However, the Court denied Plaintiffs' motion for a preliminary injunction directed solely to the Commission because (1) the injunctive relief sought would have required the Court to find that Abrams already is the Democratic Party nominee for Governor; (2) Georgia law is clear that political party candidates for public office are

nominated in a primary (and makes no exceptions depending upon the number of candidates qualifying for the primary); and (3) Plaintiffs' requested relief would not address the purported unconstitutionality of the LC Statute, which is that Governor Kemp's leadership committee, Georgians First, is able to raise unlimited funds during a period when Abrams is not permitted to do so. Id. at 18-19, 32-34.

## D.   <u>One Georgia v. Carr</u>, Phase Two

On April 20, 2022, the Court granted Plaintiffs' unopposed motion to file their First Amended Complaint.[4]  Apr. 20, 2022 Order [Doc. 47].  The First Amended Complaint adds Georgians First as a party defendant.  First Am. Compl. ¶ 21.  The First Amended Complaint again contends that the "LC Statute as applied . . . violates Plaintiffs' constitutional rights of speech and association."  Id. ¶¶ 12, 81.  Specifically, Plaintiffs allege that, as applied, the LC Statute "has the purpose and effect of quieting core political speech of *any other challenger* to the incumbent governor, including a qualified, declared candidate for governor . . . ."  Id. ¶ 9.  Plaintiffs question the legitimacy of any state interest furthered by the statute and argue that "[e]ven if the LC Statute were supported by a sufficiently

---

[4] The First Amended Complaint contains all of the factual allegations referenced by the Court in its discussion of the original complaint.  <u>See</u> pp. 6-7, *infra*; First Am. Compl. [Doc. 48] ¶¶ 14, 16, 48, 54-57, 59.

important interest, the statute is not closely drawn to achieve any legitimate interest." Id. ¶¶ 10-11, 79-80. In their challenge under the First Amendment, Plaintiffs assert that "[t]he LC Statute unfairly allows Defendant Georgians First to raise unlimited contributions on behalf of Governor Kemp based solely on his status as Governor, and prior to his becoming the Republican Party nominee for Governor of Georgia, whereas One Georgia is not currently permitted to do the same." Id. ¶ 78. The First Amended Complaint again asks this Court to declare the LC Statute violative of the First and Fourteenth Amendments as applied to One Georgia. Id., Prayer for Relief ¶ A.

Although Plaintiffs again acknowledge in their First Amended Complaint that One Georgia began accepting contributions after the qualifying period ended on March 11, 2022, they again state that One Georgia "has not spent any funds in its possession" because of the Commission's failure to confirm One Georgia's status as a leadership committee.[5] Id. ¶¶ 54, 59. Plaintiffs allege that Georgians First continues to seek and accept contributions, which have no monetary

---

[5] At the hearing on Plaintiff's Second Motion for Preliminary Injunction, Plaintiffs' counsel again represented to the Court that One Georgia ceased soliciting or accepting any contributions since the Commission advised that it could not operate as a leadership committee until Abrams was nominated. Georgians First does not take exception to this representation and has offered no evidence to indicate otherwise.

limitation, in support of Governor Kemp's reelection while, at the same time,

Abrams's campaign committee is limited to soliciting funds in amounts of no more

than $7,600 per donor.  Id. ¶¶ 26-27.  As an alternative to obtaining relief against

the Commission's enforcement of the LC Statute against them, Plaintiffs now seek

to have this Court enjoin Georgians First "from soliciting or receiving

contributions unless and until Governor Kemp becomes the Republican Party's

nominee for Governor."  Id. ¶ 13; see also Prayer for Relief ¶ C.

     In their Second Motion for Preliminary Injunction, Plaintiffs contend they

have standing to seek their requested relief and are substantially likely to succeed

on the merits of their claims.  Pls.' Second Mot. for Prelim. Inj. at 10-13.  Plaintiffs

also assert they meet the other three factors that are prerequisites for obtaining

injunctive relief.  Id. at 13-15.  In their motion, Plaintiffs

> seek an order preliminarily enjoining Georgians First from soliciting or
> accepting unlimited contributions until and unless Governor Kemp is
> selected in the 2022 primary election as the Republican Party nominee
> for Governor of Georgia, or alternatively, until Plaintiffs are permitted
> to raise and spend campaign funds though One Georgia on the same
> terms as the governor's leadership committee.

Id. at 2.  Following the filing of Plaintiffs' motion, this Court ordered Plaintiffs to

serve Georgians First with copies of the Amended Complaint, Second Motion for

Preliminary Injunction, and its order scheduling responsive briefing, and service

was accomplished through counsel for Georgians First.  See Apr. 22, 2022, Order

[Doc. 53]; Proof of Service [Doc. 54-1]; Email from Ed Bedard to Adam M. Sparks (Apr. 22, 2022 at 2:11 PM) [Doc. 54-2]. On April 25, 2022, Georgians First and the State Defendants filed their responses in opposition to Plaintiffs' Second Motion for Preliminary Injunction [Docs. 60, 62], and Plaintiffs filed their reply the following day [Doc. 64]. The Court conducted a hearing on the Second Motion for Preliminary Injunction on April 28, 2022, at which all parties were present.

## II.    STANDING

Georgians First contends that Plaintiffs lack standing to bring the First Amended Complaint against it because Plaintiffs' alleged injuries are not traceable to Georgians First. Def. Georgians First Leadership Committee, Inc.'s Resp. in Opp'n to Pls.' Second Mot. for a Prelim. Inj. ("Georgians First Opp'n") [Doc. 60] at 4-7. Although State Defendants repeat their arguments as to lack of standing that were made in opposition to Plaintiffs' first motion for a preliminary injunction,[6] they acknowledge that the alternative relief requested by Plaintiffs in their second motion for preliminary injunction "would lie solely with Georgians

---

[6] The Court notes, to the extent State Defendants "reassert" their standing arguments previously made in opposition to Plaintiffs' first motion for preliminary injunction, the Court ruled on those arguments in its April 14, 2022, Order. Apr. 14, 2022, Order at 11-19.

First and not with any of the State Defendants." State Defs.' Opp'n to Pl.'s Second

Mot. for a Prelim. Inj. [Doc. 62] at 4.

Article III of the United States Constitution expressly limits federal

jurisdiction to "cases and controversies" and does not permit federal courts to issue

advisory opinions. Miller v. F.C.C., 66 F.3d 1140, 1145 (11th Cir. 1995) (citing

Flast v. Cohen, 392 U.S. 83, 94-96 (1968)). "To have a case or controversy, a

litigant must establish that he [or she] has standing," United States v. Amodeo, 916

F.3d 967, 971 (11th Cir. 2019), which requires the litigant to show (1) an injury in

fact that (2) is fairly traceable to the challenged action of the defendant and (3) is

likely to be redressed by a favorable decision. Lujan v. Defs. of Wildlife, 504 U.S.

555, 560-61 (1992). The three components form an "irreducible constitutional

minimum." Id. at 560. "The party invoking federal jurisdiction bears the burden

of establishing these elements," which, at the initial pleading stage, may be

established based on "general factual allegations of injury." Id. at 561.

## A.    Injury in Fact

No Defendant contends that Plaintiffs have failed to suffer an injury in fact.

In order to suffer an "injury in fact," (1) the injury "must be an invasion of a

legally protected interest that is sufficiently concrete and particularized rather than

abstract and indefinite," (2) "there must be a causal connection between the injury

and the challenged action of the defendant that is not too attenuated," and (3) "it must be likely rather than speculative that the injury will be redressed by a favorable decision." Ga. State Conf. of NAACP Branches v. Cox, 183 F.3d 1259, 1262 (11th Cir. 1999) (citations and punctuation omitted).

The Court agrees with Plaintiffs that they have alleged an injury in fact. In Davis v. Fed. Election Comm'n, 554 U.S. 724, 729 (2008), the Supreme Court considered a challenge to a federal statute providing that when a self-financing candidate expends more than $350,000 in personal funds, a competing candidate may raise three times the normal limit on contributions from individual donors. The Supreme Court found that the unequal treatment afforded by the statute was an injury sufficient to confer standing to a self-funded candidate to file a First Amendment challenge:

> Section 319(a) would shortly burden his expenditure of personal funds by allowing his opponent to receive contributions on more favorable terms, and there was no indication that his opponent would forgo that opportunity. Indeed, the record at summary judgment indicated that most candidates who had the opportunity to receive expanded contributions had done so. In these circumstances, we conclude that Davis faced the requisite injury from § 319(a) when he filed suit and has standing to challenge that provision's asymmetrical contribution scheme.

Id., 554 U.S. at 734-35.

14

Similarly, in this case, Abrams, through One Georgia, is unable to receive unlimited contributions in the same manner as Governor Kemp, through Georgians First, even though they are both running for the same office, because of the inequitable scheme which permits Governor Kemp to raise funds not subject to the individual contribution limits established by O.C.G.A. § 21-5-41(a), while Abrams remains subject to those limits until she is able to chair a leadership committee as the nominee of the Democratic Party of Georgia.  The Court finds that Plaintiffs have alleged an injury in fact based on the unequal campaign finance scheme established by O.C.G.A. § 21-5-34.2.

**B.    Traceability**

"To satisfy the causation requirement of standing, a plaintiff's injury must be 'fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court.'" Jacobson v. Fla. Sec'y of State, 974 F.3d 1236, 1253 (11th Cir. 2020) (quoting Lujan, 504 U.S. at 560).  "Proximate causation is not a requirement of Article III standing . . . Even harms that follow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." Wilding v. DNC Servs. Corp., 941 F.3d 1116, 1125 (11th Cir. 2019) (alterations accepted and citations omitted).  A plaintiff "need not show (or, as here, allege) that 'the defendant's actions are the

15

very last step in the chain of causation.'" Id. at 1126 (quoting Bennett v. Spear, 520 U.S. 154, 168-69 (1997)).

Georgians First contends that this Court previously ruled that Plaintiffs' injuries are traceable to the Commission and that much of the First Amended Complaint continues to assert injury by the Commission's failure to confirm One Georgia's ability to operate as a leadership committee. Georgians First Opp'n at 5-6. However, that ruling was limited to the parties then before the Court. The question presently before the Court is whether Plaintiffs' injury can be fairly traceable to Georgians First, now a defendant in the case.

Plaintiffs have alleged an injury that is traceable to the unequal campaign finance scheme established by the LC Statute which authorizes Governor Kemp's leadership committee to solicit unlimited amounts of contributions for his re-election prior to his nomination as the Republican Party's candidate for Governor but simultaneously authorizes no other candidate for Governor to do the same until that candidate secures his or her party's nomination in the primary election. First Am. Compl. ¶¶ 4-5, 78. Plaintiffs have sufficiently alleged at least an indirect harm flowing from the actions of Georgians First in continuing to solicit contributions prior to Governor Kemp's nomination as the Republican Party

candidate for Governor while One Georgia is unable to do so.[7]  Plaintiffs' injury is,

therefore, traceable to Georgians First.

## C.    Redressability

Plaintiffs must prove that there is a substantial likelihood that their injuries

would be redressed by a favorable decision on the merits.  See Clapper v. Amnesty

Int'l, USA, 568 U.S. 398, 410-14 (2013) (holding that it must be likely, not merely

speculative, that the injury will be redressed by a favorable decision).  Relief that

prevents or deters violations from reoccurring satisfies the redressability

requirement.  Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528

U.S. 167, 185 (2000).

---

[7] Georgians First makes much of the fact that One Georgia accepted a $1.5 million contribution on March 14, 2022, three days after Abrams qualified to run for Governor, and attempts to equate Georgians First's ability to raise funds with One Georgia's.  Georgians First Opp'n at 2, 6-7.  However, it is undisputed that One Georgia ceased all fundraising days later when it could not receive an assurance from the Commission that it could operate as a leadership committee.  As this Court previously held, because Abrams will not be the Democratic Party nominee for Governor until after the primary election to be held on May 24, 2022, the LC Statute only authorizes Abrams to use a leadership committee to solicit unlimited contributions after she becomes the nominee.  Apr. 14, 2022, Order at 22-24. Because the LC Statute permits Governor Kemp to fundraise through Georgians First as the incumbent Governor, as opposed to his party's nominee for Governor, the two committees are not treated equally under the statutory scheme.

17

Plaintiffs have requested an order to enjoin Governor Kemp's leadership committee, Georgians First, from soliciting or receiving contributions until he becomes the Republican Party's nominee for Governor. This relief would redress Plaintiffs' alleged injury—being limited to a statutory maximum contribution of $7,600 per donor at the same time their prospective opponent is able to raise unlimited amounts of contributions—by an order that would place both the incumbent Governor and his Democratic challenger under the same contribution limit until they are selected as nominees of their respective political parties in the primary election.[8]

## III.  LEGAL STANDARD

In order to obtain a preliminary injunction, a plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that granting the relief would not be adverse to the public interest. Scott v. Roberts, 612 F.3d 1279, 1290 (11th Cir. 2010); Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26

---

[8] Georgians First does not argue that the order sought by Plaintiffs would fail to redress the alleged injury. State Defendants' redressability objections were ruled upon in the Court's April 14, 2022, Order.

(11th Cir. 2005).  A preliminary injunction is an extraordinary remedy which a court should grant only when the movant clearly carries the burden of persuasion as to each of the four prerequisites.  Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003).  The decision whether to grant preliminary injunctive relief is within the broad discretion of the district court.  Democratic Party of Ga., Inc. v. Crittenden, 347 F. Supp. 3d 1324, 1339 (N.D. Ga. 2018).

"The likelihood of success on the merits is generally considered the most important of the four factors."  Furman v. Cenlar FSB, No. 1:14-CV-3253-AT, 2015 WL 11622463, at *1 (N.D. Ga. Aug. 26, 2015) (citation and quotation omitted); see also Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986) ("Ordinarily the first factor is the most important.").  The purpose of a preliminary injunction is to maintain the status quo until the court can enter a final decision on the merits of the case.  Bloedorn v. Grube, 631 F.3d 1218, 1229 (11th Cir. 2011).

## IV.   DISCUSSION

### A.   There is a Substantial Likelihood of Success on the Merits of Plaintiffs' Claim for Violation of Their First Amendment Rights Under O.C.G.A. § 21-5-34.2 As Applied to the Solicitation of Contributions From Georgians First in Support of Governor Kemp's Re-election Prior to Becoming the Nominee of the Republican Party.

The First Amendment to the United States Constitution declares that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. "Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people." Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 339 (2010) (citing Buckley v. Valeo, 424 U.S. 1, 14-15 (1976)) ("In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation."). "[T]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." Eu v. San Francisco Cnty. Democratic Cent. Comm., 489 U.S. 214, 223 (1989) (internal punctuation and citation omitted).

"Spending for political ends and contributing to political candidates both fall within the First Amendment's protection of speech and political association." Fed. Election Comm'n v. Colo. Republican Fed. Campaign Comm., 533 U.S. 431, 440

20

(2001); see also Ala. Democratic Conf. v. Broussard, 541 F. App'x 931, 932-33

(11th Cir. 2013) ("It is well-established that political contributions are considered

to be political speech, and protected by the First Amendment."). In the context of

political speech, the right of association and the right of expression are not

analyzed in a vacuum. Citizens Against Rent Control/Coalition for Fair Housing

v. City of Berkeley, 454 U.S. 290, 300 (1981) ("A limit on contributions in this

setting need not be analyzed exclusively in terms of the right of association or the

right of expression. The two rights overlap and blend; to limit the right of

association places an impermissible restraint on the right of expression."). "[T]he

right of [political] association is a basic constitutional freedom . . . that is closely

allied to freedom of speech and a right which, like free speech, lies at the

foundation of a free society." Buckley, 424 U.S. at 25 (1976) (internal punctuation

and citation omitted).

Nevertheless, the right to receive political contributions is not without the

ability of a legislative body to impose some restriction.

> The right to participate in democracy through political contributions is
> protected by the First Amendment, but that right is not absolute. Our
> cases have held that Congress may regulate campaign contributions to
> protect against corruption or the appearance of corruption. At the same
> time, we have made clear that Congress may not regulate contributions
> simply to reduce the amount of money in politics, or to restrict the
> political participation of some in order to enhance the relative influence
> of others.

McCutcheon v. Fed. Election Comm'n, 572 U.S. 185, 191 (2014) (citations omitted).  "Compared to restrictions on spending, which receive a higher level of scrutiny, 'restrictions on political contributions have been treated as merely 'marginal' speech restrictions subject to relatively complaisant review under the First Amendment, because contributions lie closer to the edges than to the core of political expression."  Davis, 554 U.S. at 738 (quoting Fed. Election Comm'n v. Beaumont, 539 US. 146, 161 (2003)).  Consequently, "[a] law limiting contributions is valid 'if the State demonstrates a sufficiently important interest' and the law is 'closely drawn' to serve that state interest, even if there is a 'significant interference' with political association."  Ala. Democratic Conf. v. Att'y Gen. of Ala., 838 F.3d 1057, 1063 (11th Cir. 2016) (quoting Buckley, 424 U.S. at 25).  This standard is a "lesser demand" than strict scrutiny.  Id. (citing Beaumont, 539 U.S. at 155).  "The goal of this 'less rigorous standard of review' is to give the legislature 'sufficient room to anticipate and respond to concerns about circumvention of regulations designed to protect the integrity of the political process.'"  Id. (quoting McConnell v. Fed. Election Comm'n, 540 U.S. 93, 137 (2003), overruled on other grounds by Citizens United, 558 U.S. 310).

In Perdue v. Kemp, this Court considered whether the plaintiffs in that case were likely to succeed on their claim that, based on Davis, Georgians First's

expenditures in support of Governor Kemp's re-election during the primary were

violative of the First Amendment:

> O.C.G.A. § 21-5-34.2 effectively negates the contribution limit upon
> which all candidates for Governor in the primary election are bound for
> just one person: Governor Kemp, the incumbent. The new law leaves
> Perdue subject to a maximum contribution limit of $7,600 while
> Governor Kemp can raise unlimited contributions through his
> leadership committee, Georgians First. Therefore, whether this law
> passes constitutional muster depends on whether Defendants can
> demonstrate a sufficiently important state interest and, if so, whether
> the law is closely drawn to serve that interest.

Perdue v. Kemp, 2022 WL 710959, at *10. This Court then found that the state's

proffered interest, "transparency," was "not a sufficient legal justification for the

'unprecedented step of imposing different contribution . . . limits on candidates

vying for the same seat[.]'" Id. at *12 (quoting Davis, 554 U.S. at 743).[9]

Additionally, the Court found that there was no indication that the state's interest

in enacting the LC Statute was the prevention or appearance of corruption, which

is the only recognized state interest sufficiently legitimate to justify any intrusion

upon political contributions. Id. Finally, this Court found that even if there was a

---

[9] State Defendants acknowledged at the hearing on Plaintiffs' Second Motion for
Preliminary Injunction that "transparency" remains the purported state interest to
justify the incumbent Governor being able to form a leadership committee to raise
and spend unlimited contributions under the LC Statute.

legitimate government interest, the LC Statute was not closely drawn to serve that interest.  Id.  That same reasoning is applicable to the facts of this case.[10]

Both Abrams and Governor Kemp are candidates for Governor who are not yet the nominees of their respective political parties.  Under the current campaign finance scheme, Governor Kemp, through Georgians First, can accept unlimited campaign contributions, effectively removing Governor Kemp from the statutory contribution limits imposed by O.C.G.A. § 21-5-41.  In contrast, because Abrams is not yet the Democratic Party nominee, she is confined to the campaign contribution limits under O.C.G.A. § 21-5-41 even though she is running for the same office.  In other words, Governor Kemp and Abrams are both candidates for the same office, neither of whom have officially secured their parties' nomination, yet Governor Kemp through his leadership committee can accept contributions in unlimited amounts based solely on his status as the incumbent Governor, while Abrams is not yet permitted to accept contributions through a leadership committee

---

[10] State Defendants do not proffer any additional arguments as to the constitutional viability of the LC Statute in this case.  See State Defs.' Opp'n. at 4-6.  State Defendants rely on this Court's Apr. 14, 2002, Order which found that Plaintiffs were unlikely to succeed in obtaining their requested relief as to the Commission (to enable One Georgia to be permitted to operate as a leadership committee in order to raise unlimited contributions even before Abrams is selected as the Democratic Party nominee for Governor).

and is subject to the $7,600 limit.  As this Court held in <u>Perdue v. Kemp</u>, this campaign finance scheme amounts to an impermissible restraint on speech on all candidates other than the incumbent who run for Governor of Georgia.  <u>Perdue v. Kemp</u>, 2022 WL 710959, at *9 (quoting <u>Davis</u>, 554 U.S. at 738, 743-44).[11]

In <u>Perdue</u>, this Court preliminarily enjoined Governor Kemp's leadership committee, Georgians First,

> from expending funds beginning on the date of this Order (1) for the purpose of advocating for the re-election of Governor Kemp or the defeat of an opponent of Governor Kemp through the 2022 primary election and 2022 primary runoff election, if any there be, or (2) to defray ordinary and necessary expenses incurred in connection with Governor Kemp's campaign for re-election as Governor of Georgia through the 2022 primary election and 2022 primary runoff election, if any there be, until further Order of this Court.

---

[11] In opposition to the merits of Plaintiffs' First Amended Complaint, Georgians First incorporates its prior arguments made in the <u>Perdue v. Kemp</u> litigation, namely, that the LC Statute expands but does not restrict expression.  <u>See</u> Georgians First Opp'n at 12-13.  But permitting one candidate for statewide office to raise funds in unlimited amounts while restricting all other candidates running for the same statewide office to a maximum dollar level operates as an impermissible burden on the First Amendment rights on all other candidates.  Just like the statute challenged in <u>Davis</u>, the LC Statute "does not raise the contribution limits across the board" but raises the limits only for a single candidate—the incumbent Governor.  It bears repeating what was said by the Supreme Court: "We have never upheld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other" and "the unprecedented step of imposing different contribution and coordinated party expenditure limits on candidates vying for the same seat is antithetical to the First Amendment."  <u>Davis</u>, 554 U.S. at 738, 743-44.

> Nothing in this Order shall prevent Georgians First Leadership Committee, Inc. from continuing to receive contributions and to make expenditures in support of public officials other than Governor Kemp in accordance with the requirements of O.C.G.A. § 21-5-34.2.   In addition, nothing in this Order shall operate to make unlawful any expenditures by Georgians First Leadership Committee, Inc. to promote Governor Kemp's re-election or the defeat of an opponent of Governor Kemp previously made prior to the date of this Order or previously committed to be made by a contract entered into prior to the date of this Order even if those expenditures have not yet been completed in accordance with such pre-existing contract.

Perdue v. Kemp, 2022 WL 710959, at *15.  The Order was silent as to whether

Georgians First is able to solicit and receive contributions for Governor Kemp's

campaign against the Democratic Party nominee prior to the time in which he may

become the Republican Party nominee for Governor.  Plaintiffs have shown that

Georgians First has continued to solicit contributions for use in the general election

since this Court's preliminary injunction order in Perdue v. Kemp.[12]  Because this

Court's Order in Perdue does not specifically preclude Governor Kemp from

---

[12] An exhibit filed in Perdue v. Kemp shows that, shortly after this Court's February 7, 2022, Order enjoining Georgians First from spending funds through the primary election, Georgians First published a notice that announced "the order does not affect contributions to Georgians First" which "can continue accepting unlimited contributions from individuals, businesses, and PACs, as it did prior to the order."  Perdue v. Kemp, No. 1:22-CV-53-MHC [Doc. 64-1].  At the hearing on Plaintiffs' Second Motion for Preliminary Injunction, counsel for Georgians First acknowledged that the leadership committee was still soliciting and accepting contributions which could be spent in the general election.

raising funds in unlimited amounts while Abrams is subject to the $7,600 limit, the

constitutional infirmity that forms the basis of this case still exists.  As did the

plaintiffs in Perdue v. Kemp, Plaintiffs in this case are likely to be able to show

that the LC Statute as applied is an impermissible infringement of Plaintiffs' First

Amendment rights.

> **B.**   **Georgians First Qualifies as a State Actor Subject to Injunctive Relief Because Governor Kemp is a Joint Participant in the Enterprise.**

Georgians First also contends that Plaintiffs are unlikely to succeed on the

merits of its case because Georgians First is not a state actor and cannot operate

"under color of state law" so as to sustain an action under 42 U.S.C. § 1983.

Georgians First Opp'n at 7-11.

To obtain "relief in an action brought under [42 U.S.C.] § 1983, [a plaintiff]

must establish that they were deprived of a right secured by the Constitution or

laws of the United States, and that the alleged deprivation was committed under

color of state law."  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50

(1999).  The latter element requires a showing that the alleged wrong was the

product of state action.  Id.  A private party may be considered a state actor in "rare

circumstances" when one of three tests is met:

> (1) the State has coerced or at least significantly encouraged the action
> alleged to violate the Constitution ("State compulsion test"); (2) the

private part[y] performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) the State had so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise ("nexus/joint action test").

Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001) (citation and alterations omitted).  The determination of whether private actions can fairly be attributed to the state under any of these three tests is a fact specific determination to be made on a case-by-case basis.  Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 298 (2001).

Under the nexus/joint action test, there must be a "symbiotic relationship" between the parties that "involve[s] the 'specific conduct of which the plaintiff complains.'" Rayburn, at 1348 (quoting Sullivan, 526 U.S. at 51); see also Charles v. Johnson, 18 F.4th 686, 696 (11th Cir. 2021) ("[T]he Supreme Court has held that a 'willful participant in joint activity with the State or its agents' is a state actor.") (citing United States v. Price, 383 U.S. 787, 794 (1966)); Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1279 (11th Cir. 2003) (holding that the nexus/joint action test may be satisfied when "the private actor is merely a surrogate for the state").

Although Georgians First is not a state entity, its ability to perform its function is entirely dependent upon and intertwined with the Governor of Georgia,

28

Brian Kemp.  The LC Statute requires that the leadership committee that is

Georgians First be "chaired by the Governor."  O.C.G.A. § 21-5-34.2(a).  And if

Governor Kemp ceases to hold the office of Governor of Georgia, it is Governor

Kemp who would be required to "transfer the remaining assets of [Georgians

First], if any, to another leadership committee within 60 days, name an eligible

person as the new chairperson of the leadership committee within 60 days, or

dispose of the leadership committee's assets" as provided by law.  Id. § 21-5-

34.2(c).  In short, without Governor Kemp as its chair, there can be no Georgians

First.  The LC Statute by its terms *requires* Governor Kemp to be the chair of his

leadership committee for one to exist and gives him the responsibility to dispose of

its assets should he cease to hold the office of Governor.  By the express terms of

the LC Statute, Governor Kemp has "so far insinuated [him]self into a position of

interdependence with the [Georgians First] that [he] is a joint participant in the

enterprise."  Rayburn, 241 F.3d at 1348 (citation and alterations omitted).

Because the nexus/joint action test is satisfied, Georgians First qualifies as a

state actor for purposes of Plaintiffs' claims under 42 U.S.C. § 1983.

## C.  Plaintiffs Have Established Irreparable Injury.

"The loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373

(1976); see also Cate v. Oldham, 707 F.2d 1176, 1188 (11th Cir. 1983)

("[V]iolations of first amendment rights constitute per se irreparable injury").

"The rationale behind these decisions is that chilled free speech . . ., because of its

intangible nature, could not be compensated for by monetary damages; in other

words, plaintiffs could not be made whole." Scott v. Roberts, 612 F.3d 1279, 1295

(11th Cir. 2010) (citation omitted and alterations accepted).  Because this Court

finds that Plaintiffs are likely to succeed on their First Amendment claim, as

applied to Georgians First's solicitations of unlimited amounts of contributions in

support of Governor Kemp's re-election prior to his becoming the nominee of the

Republican Party for Governor, Plaintiffs have established irreparable injury.

### D.    The Balance of Harms Weighs in Favor of Plaintiffs.

Georgians First contends that because One Georgia raised $1.5 million three

days after Abrams qualified to run for Governor of Georgia, restricting Georgians

First from continuing to raise funds would place the latter at a disadvantage.

Georgians First Opp'n at 13-14.  However, the preliminary injunction entered by

this Court in Perdue v. Kemp did not expressly prohibit Georgians First from

continuing to raise unlimited funds for use after the conclusion of the primary and,

if necessary, primary runoff elections.  Therefore, Georgians First has faced no

prior restriction in soliciting contributions in unlimited amounts for use after the

primary or primary runoff election. And there is no evidence before the Court that One Georgia continued to accept contributions after it failed to receive assurance from the Commission that it could continue to operate as a leadership committee.

Allowing Governor Kemp's re-election campaign to be the beneficiary of unlimited contributions raised through a leadership committee he chairs while, at the same time, Abrams is restricted to the statutory limit of $7,600 by Georgia law is "antithetical to the First Amendment." Davis, 554 U.S. at 743-44. The balance of harms therefore weighs in favor of Plaintiffs.

### E.      The Public Interest Favors a Preliminary Injunction.

The public has no legitimate interest in the enforcement of an unconstitutional statute. Scott v. Roberts, 612 F.3d 1279, 1297 (11th Cir. 2010). Therefore, the public interest supports the entry of a preliminary injunction.

## VI.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Second Motion for Preliminary Injunction [Doc. 51] is **GRANTED**.

Defendant Georgians First Leadership Committee, Inc. is

**PRELIMINARILY ENJOINED** from soliciting or receiving contributions until

and unless Governor Brian Kemp becomes the Republican Party nominee for

Governor of Georgia in the 2022 primary election or primary election runoff.

**IT IS SO ORDERED** this _28th_ day of April, 2022.


_Mark H. Cohen_
MARK H. COHEN
United States District Judge